## NAT BAKER v. THE STATE.

### No. 2812. Decided December 9, 1903.

**1.—Manslaughter—Evidence—Conspiracy—Declarations.**

The evidence, stated in the opinion, indicates very clearly that an agreement or conspiracy had been entered into between appellant and his brother John Baker with regard to the settlement of the trouble existing between deceased and John Baker occasioned by the persistent attention of deceased to Baker's daughter; and upon this evidence it was held admissible to prove the declarations of appellant made prior to the homicide.

**2.—Same.**

Such proof of a conspiracy or agreement, considered in connection with the other evidence, tending to solve the question of who began the difficulty, was admissible.

**3.—Res Gestae—Remarks of Bystanders.**

Remarks of bystanders not heard by the participants in a difficulty are not res gestae.

**4.—Evidence—Harmless Error.**

Where State's counsel, on cross-examination, asked a witness to state whether or not he made a certain statement to a certain person at a cer-

tain place and at a certain time, appellant not being present; Held to be harmless error, as appellant could not be affected in any manner by what the witness may have stated to others in his absence.

Appeal from the District Court of Polk. Tried below before Hon. L. B. Hightower.

Appeal from a conviction of manslaughter; penalty, two years confinement in the penitentiary.

The appellant, Nat Baker, was indicted in the District Court of Polk County, Texas, on the 7th day of December, 1900, for the murder of Gabe Copeland, alleged to have been committed on the 19th day of August, 1900. On the 11th day of June, 1903, he was arraigned for trial after having presented proper motion to quash the bill of indictment against him, which motion was overruled, and on the 16th day of June, 1903, he was found guilty of manslaughter, his punishment being assessed at two years confinement in the State penitentiary.

A concise, but sufficient, statement of the origin of the trouble and facts leading up to and attendant upon the killing will be found in the opinion, and no further statement is deemed necessary.

*J. C. Feagin, C. L. Carter,* and *Holshousen & Manrey,* for appellant, filed an able and interesting brief.

*Howard Martin,* Assistant Attorney-General, for the State.—It makes no difference at what time anyone enters into a conspiracy, for immediately upon such entrance his liability attaches as well for the past acts and declarations of his confederates as those occurring in the future anterior to the final consummation of the unlawful enterprise. Smith v. State, 21 Texas Crim. App., 96; Loggins v. State, 8 Texas Crim. App., 434; Baker v. State, 6 Texas Crim. App., 812; Smith v. State, 21 Texas Crim. App., 107; Id., 134.

Appellant complains of the court not permitting him to prove by the witness Coogler that he heard the shots from a pistol, and that he (witness) remarked at the time, "Somebody is trying his pop," or "Somebody is trying his pistol." Appellant insists that this declaration of the witness was admissible as res gestae. In this he is mistaken. This witness was not interested or connected in any way with the transaction. He was a mere bystander. Willis v. State, 22 S. W. Rep., 969; Ex parte Kennedy, 57 S. W. Rep., 648; Felder v. State, 23 Texas Crim. App., 477.

DAVIDSON, PRESIDING JUDGE.—This conviction was for manslaughter, the punishment being two years confinement in the penitentiary.

It is disclosed by the record that John Baker, a widower with several children, the oldest being a girl 13 or 14 years of age, lived in the same neighborhood with a family named Copeland. Among the Copelands was a young man, Gabe Copeland, about 20 years of age, whose attention to the eldest daughter of Baker was distasteful to her father. This led

to trouble and bitter feelings between the Copelands upon one side and the Bakers on the other, at least so far as John Baker was concerned. Finally, the feeling became rather acute, and Copeland was ordered to remain away from the residence of John Baker, and cease his attentios to his daughter. One trouble was added to another until the matter assumed rather grave and serious aspects, when appellant (brother of John Baker), then living at Groveton, in Trinity County, went down into Polk County, where the parties lived, and adjusted a settlement between them. The basis of the settlement was that Copeland was to remain away from John Baker's and cease his attentions to John Baker's daughter, and the parties were to pass and repass each other in a friendly way. This occurred about the 1st of August, perhaps on that day.

On the following Tuesday John Baker placed his children in charge of Ira Denham, while he made a trip into Angelina County to secure the services of an old lady living in that county as his housekeeper. On the following morning after Baker left home, deceased went to Baker's residence, where his children were, took his elder daughter off to a house on the farm, and, armed with a winchester, kept her in this vacant house most of the day, they being alone. Later, and during the evening, he escorted her from this vacant house to the residence and spent a while in the residence with her. Late in the evening he mounted his horse, armed as before, and left John Baker's premises. Denham went from his premises to Baker's premises and tried to induce the girl to come away from deceased, but failed. It seems he sent the smaller children for the girl later on, and they came back crying without their elder sister. John Baker returned late that evening, and Denham gave his full information as to the occurrences of the day, and the conduct of deceased towards Baker's daughter. This brought up and renewed the troubles. It seems there was a meeting Wednesday night among the neighbors to try to settle this trouble, and inferentially it is made to appear that deceased, Gabe Copeland, was to leave the neighborhood. Thursday John Baker sent to Groveton, in Trinity County, for appellant. He also sent for his brother Charley, who lived six or eight miles off in Polk County. Saturday night the two brothers, appellant and Charley, met John Baker at his residence. Sunday morning they went to the residence of witness Marsh, inquiring for the Copelands. They were informed that the Copelands had passed up the road some time earlier. John Baker took one of the witnesses off to one side and had a conversation with him, asking the whereabouts of the Copelands. Appellant, Nat Baker, is shown to have remarked while at Marsh's residence, and after inquiring about the Copelands, that the matter would "be settled and settled right." The killing followed that evening, under circumstances as proved by the State, showing preparation and lying in wait for deceased on the part of appellant, an accidental meeting and the beginning of the difficulty on the part of the Copelands, two of whom were present and began shooting at John Baker before the Bakers un-

dertook to fire any shots. Gabe Copeland was killed, Cicero Copeland shot down, as was Charley Baker.

Three weeks before the killing, about ten or twelve days prior to the first settlement brought about by appellant, John Baker is said to have remarked, in substance: "If they (the Copelands) do not let me alone I will take my gun and get in the bushes and hell will be to pay." On Wednesday night at the meeting of the neighbors to discuss the trouble between Copeland and John Baker, it is shown by some of the State's evidence that John Baker said he and Gabe Copeland (deceased) could not live in the same country. Exception was reserved to these remarks and threats, mainly because there was no conspiracy between the Bakers. The facts show that Nat Baker had brought about a sort of armistice between the parties, the conditions of which were that deceased should stay away from John Baker's daughter and house, and John Baker was to pass and repass deceased Copeland in a friendly manner. This conditional treaty of peace was broken by deceased during John Baker's absence in Angelina County. On Thursday, after the deceased visited the girl, John Baker sent for the two brothers and on Saturday night they met him at his residence. The acts and conduct of the Bakers subsequent to the meeting on Saturday until the killing occurred indicated very clearly that an agreement had been reached to settle the matter in a different way from what they had previously settled it, as one of the witnesses states appellant remarked the matter would be settled and settled right, and it was settled so far as deceased is concerned a few hours later. Taking these facts together, it shows that appellant three weeks before the homicide went to his brother's residence and canvassed the entire matter of their difficulties between the Copelands and John Baker. Therefore he became thoroughly acquainted with the whole situation. Upon this visit he was a peacemaker, and succeeded conditionally. These conditions were broken by Copeland by the last visit of deceased to the daughter of John Baker and niece of appellant. Nothing criminal is shown in the record further than the statement that he kept her in these two houses during the major part of the day. Taking all these facts together, we are of the opinion that the testimony as to the statements of John Baker were admissible. The parties met Saturday night and acted together thence until the death of deceased. Appellant must have been thoroughly acquainted with all that had preceded and with a full knowledge of these facts he entered into this killing. He had before been a peacemaker; this time anything else. He knew the conditions, because he brought about these conditions, and knew they were broken. The threats that occurred three weeks before the killing were withdrawn by the court, and the jury instructed to disregard them. Under the authorities and the decisions of this State, we believe all these statements of John Baker were admissible against appellant. We believe he was sufficiently connected with all the antecedents matters, with full knowledge of all that trans-

pired antecedent to the insults of deceased toward his niece. They were admissible upon another ground. The State's theory was that the Bakers had secreted themselves at the junction of two roads, anticipating the Copleands would return that evening along that road. Appellant was seen by a party at the point of the homicide, about thirty minutes before it occurred. The other two Baker's were not visible to this witness. As the Copelands approached the three Bakers put themselves in evidence. The State's contention is that they began the shooting at the Copelands at once, and such is the testimony of Cicero Copeland, one of the parties wounded in the difficulty; and they continued to shoot until Gabe Copeland was killed, and he (Cicero) shot down. Defendant's theory was that they were at the point of the difficulty en route to a friend's house, who lived farther down the road, and the meeting was purely accidental, and that the Copeland's began the difficulty by both of them jumping from their horses and shooting at John Baker. The prior statements of John Baker, under this state of facts, were admissible as tending to solve the question as to who began this difficulty. It became very important testimony under the circumstances. Cline v. State, 33 Texas Crim. Rep., 491; Id., 34 Texas Crim. Rep., 347. There was no error on the part of the court admitting this testimony.

The witness Coogler testified that at the time of the shooting he was about three-fourths of a mile from the scene of the killing, and heard the shots. After testifying as to his experience in the use of firearms, and that he could distinguish and designate the difference between the reports of pistols, winchesters and shotguns, he states, that he distinctly heard the report of the first gun fired; and that it was a pistol shot. The Copelands were armed with pistols, and the Bakers with shotguns and winchesters. That immediately upon hearing the first report, he made the statement that somebody was trying his "pop," or somebody was trying his "pistol." This expression of the witness was excluded, or rather was not permitted to go to the jury. Exception was reserved to this ruling of the court, and from the discussion of the matter by appellant's counsel, it seems to have been offered as res gestae. The court's action was correct. There is no ground to make this testimony admissible as res gestae. Even if it was put upon the ground that he was a bystander, it would be inadmissible, because remarks of bystanders, not heard by the participants in the difficulty, are not res gestae. Ex parte Kennedy, 57 S. W. Rep., 648; Felder v. State, 23 Texas Crim. App., 477; Willis v. State, 27 S. W. Rep., 969.

State's counsel asked Ira Denham, on cross-examination, this question: "I will ask you to state whether or not you made the statement to either Ben Oliver, or in his presence, there at Kickapoo church, or near there, Saturday before the killing, to the effect, in substance, that the Bakers were going to kill the Copelands if they had to go under the bed for them." This was an improper question and should not have been asked. Appellant could not be affected in any manner by what the witness may

have ·stated to others in his absence; but the witness answered that he did not make the statement, and here the matter ended.   Oliver was not placed upon the stand to contradict the witness Denham, and the bill simply shows the question asked witness and the statement denied by him. We do not believe there was such error in this as required a reversal. The case of Tijerina v. State, 74 S. W. Rep., 913, does not justify the conclusion .that for this character of cross-examination alone the judgment should be reversed.   There were other questions in that case which required the reversal; and that portion of the decision relied upon by appellant was mentioned among the other matters.

It is also contended that the indictment is insufficient because the name of the county of Polk is not printed with sufficient distinctness to show the word "Polk."   For this purpose the original indictment has been sent up.   We have carefully examined this indictment, and while the lower portion of the two letters "lk" are not as distinct as they might have been printed, still the name "Polk" is sufficiently clear and definite. We do not regard this contention as meritorious.

We have carefully reviewed this record, and in·our opinion there is no reversible error, and the judgment is affirmed.

*Affirmed.*