### Jim Hanna v. The State.

No. 2993. Decided March 23, 1904.

**1.—Evidence—Impeachment.**

A State's witness who had stated nothing adverse to the State, but who simply denied making a certain imputed statement, can not be impeached by the State by proof that the witness did make such statement.

**2.—Same.**

The principal State's witness was asked if she did not tell C. and A. at a certain time and place that she knew something about the killing of the deceased, but was not going to tell them what it was, because she was afraid appellant would kill her; which she denied. Held, error to permit the State to prove that she did make the statement.

**3.—Evidence—Declarations of Bystanders.**

Where it was made to appear that shortly after deceased was killed and while her grave was being dug, several colored men being present and among them the defendant, when, as witness testified, he and another approached the place, witness remarked, "that dam negro killed that woman," whereupon defendant dropped his head, walked around the grave and went somewhere, witness did not notice where, but said nothing in reply, it was error to admit this testimony.

**4.—Same—Declaration Admitted, When.**

To entitle the State to introduce in evidence the declarations of bystanders, it must be clearly shown that defendant understood himself to be accused of the crime committed in such manner as to require of him a response, and even then the court should confine such evidence to its proper legal function.

**5.—Jury and Jury Law.—Misconduct.**

Where the jury are considering their verdict, argument by members of the jury that appellant failed to bring before them certain absent witnesses, and that he should have accounted for them, are improper and such circumstances can not be used as evidence against him and will necessitate a reversal of the cause.

**6.—Argument of Counsel.**

The prosecutrix, who was alone in the cabin with defendant on the night of the homicide, which occurred some distance away, stated that defendant left this cabin at about 9 o'clock that night and did not return until 4 o'clock next morning, and State's counsel stated in his argument that no one had testified that defendant did not leave said cabin and no one had denied such testimony. Held, that owing to the fact that no one but defendant being in the cabin at the time with prosecutrix to deny her statement, such remarks of counsel was a comment on the failure of appellant to testify in his own behalf.

Appeal from the District Court of Kaufman. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

Appellant was indicted for the murder of his wife, Josephine, about the 12th day of June, 1903, in Kaufman County, Texas. Defendant and Beulah Crosby, his stepdaughter, were charged with the murder and the latter was used as a State's witness, and was the only witness placed on the stand who directly implicated defendant. She first refused to tell anything further than to state that she knew something of the killing, but was afraid to tell it. It seems that afterwards, when some of the county officers, as they testified, made out like they were going to place a rope around her neck and hang her, she told them that the defendant had told her on the evening of the night of the killing that he was going to kill her mother, but that witness did not believe it. That during that night defendant left the cabin which witness and he occupied about 9 o'clock, and that she heard him return about 4 o'clock next morning. That on the night of the next day, after the night defendant left said cabin, they, witness and defendant, found the body of deceased in a house she occupied some six miles away from said cabin. That witness and defendant had been hoeing cotton away from home and left deceased at home with the babe and two small children. That deceased was cut with a knife and her infant babe was also dead in bed with her. The two children were respectively nine and five years of age, and neither seemed to have been used as a witness. The evidence tended to show that the relations between defendant and his said stepdaughter were criminally intimate. That he made some contradictory statements as to the cause of his wife's death, and that he and deceased had quarreled, and other slight inculpatory circumstances were proved against him. The witness Beulah Crosby denied on the stand that she had ever said that she knew something of the killing, but would not tell because she was afraid: whereupon the State proved that she did make such statement. She also testified that defendant had told her Friday evening, before deceased was found dead on Saturday night, on the Gibson farm, where defendant and witness were working, and on the way to said cabin, that he was going home that night and kill her mother. and that witness could then live with him, and that she replied she would not do so unless he would keep the children. The facts as they affect the issues presented are sufficiently stated in the opinion.

*J. S. Terry* and *Gordon Huffmaster,* for appellant.—The State can not bring before the jury proof of affirmative statements made out of court by a witness, which statement are denied by such witness on the stand, unless the defendant has made said witness his own witness, and said witness has made some statement material to defendant's defense, and which statement is contradicted by the statements made by the witness out of court. Parker v. State, 67 S. W. Rep., 121; Connell v. State, 75 S. W. Rep., 512.

The State will not be permitted to impeach its own witness on a negative collateral matter. The State can not introduce hearsay testimony by proving declarations made out of court which the witness on

the stand denies, and which statements were not made in the presence of the defendant.    Woodward v. State, 58 S. W. Rep., 135; Williford v. State, 37 S. W. Rep., 761; Dunnagan v. State, 44 S. W. Rep., 148; Shackleford v. State, 27 S. W. Rep., 8; Erwin v. State, 24 S. W. Rep., 904; Connell v. State, 75 S. W. Rep., 512.

The witness can not be permitted to testify that her reason for failing to disclose her knowledge of the offense, or of the intention of the defendant to commit the offense, was that she was afraid, if she told what she knew about it, defendant would kill her; because this is in effect permitting her to state that the defendant is a dangerous man, when his character had not been put in issue.

Beulah Crosby denied on the stand having told Coon and Anderson at the Gibson barn, before starting to Forney, that she knew something about the killing, but would not tell it because she was afraid Jim Hanna would kill her, and Coon and Anderson were permitted to testify that said witness Beulah Crosby did tell them at the barn on the Gibson place, the day Jim Hanna was arrested, and before they started to Forney with said witness, that she knew something about Josephine Hanna being killed, but was not going to tell it because she was afraid Jim Hanna would kill her.    Bennett v. State, 48 S. W. Rep., 61; Campbell v. State, 18 S. W. Rep., 409.

We submit that the State, however badly surprised at this testimony, could not go further than to prove by Anderson and Coon that said statement was untrue, and that said witness had not been intimidated. So far as impeachment was concerned, this would have accomplished the result just as completely as any number of contradictory statements.

A party is not called on to take up and deny and resent every remark made within fifteen feet of him when not addressed to him, or when such remark is made under such circumstancses as to leave doubt as to whom it refers, no names being called.    Mitchell v. State, 62 S. W. Rep., 572; Farris v. State, 56 S. W. Rep., 336.

The court erred in permitting the witness Beulah Crosby to state that she thought it was about 9 o'clock when Jim Hanna left the cabin on the Gibson farm on Friday night before Josephine Hanna was found dead Saturday, and about 4 o'clock next morning when she heard him return, it being shown that she had been asleep before he left the cabin, was asleep while he was out, and went to sleep again after his return, and that the noise of making a fire in the cook stove did not wake her and that she had no timepiece, but just guessed at the time.

The argument in the jury room that Beulah Crosby had testified that Jim Hanna did leave the cabin on the Gibson farm at 9 p. m. and returned at 4 a. m. next morning of the night that the homicide is supposed to have occurred, and that no one denied it, could have referred to nothing in this record except the failure of defendant to testify, and this we submit is reversible error.    Dawson v. State, 24 S. W. Rep., 414.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for twenty-five years.

The State used Beulah Crosby as a witness. She was the stepdaughter of appellant and had been going around the country with him under circumstances which would leave the inference that their relations were criminally intimate. On the night of the homicide they were occupying a room some miles distant from where deceased, who was the wife of appellant, was evidently assassinated. This witness testified that on the night it is supposed deceased was slain, she thought appellant got up about 9 o'clock at night and went out of the house. About 4 o'clock next morning, as near as she could guess, he returned. Of course, this was guesswork, for she had been asleep both before and after he went out, as well as before and after his return. She also stated that appellant had expressed his intention to her of killing deceased. She testified that while enroute to Forney, in charge of the officers, she occupied a buggy with Yates, who informed her that the assistant county attorney, Mr. Coon, had hung four negroes, and she would be the fifth, unless she told the truth about that matter—referring to the homicide and her supposed knowledge of appellant's connection with it; that they then stopped the buggy under a big elm tree, and Mr. Coon and Deputy Sheriff Anderson drove up, and after reaching them, Coon got out of his buggy and came to where she and Yates were and put a rope around her neck, and that she then told of appellant having said to her on Friday before her mother was found dead that he was going to kill her mother. This seemed to have been brought out on cross-examination. On redirect examination the county attorney asked this witness if she did not tell Bob Coon, (the assistant county attorney) and Jim Anderson (deputy sheriff), at the barn on the Gibson place, after appellant was arrested and before she and the officers started to Forney, that she knew something about her mother being killed but was not going to tell them what it was, because she was afraid appellant would kill her. She denied this, and the State was then permitted to prove that she did make the statement. To this several objections were interposed. The court admitted this upon the theory of impeachment. This was a State's witness, and had stated nothing adverse to the State. She had simply denied making the imputed statement. When she made this denial, the matter should have ended. This was simply a failure to prove a statement, and the State was not authorized, under the peculiar circumstances, either to sustain or impeach the witness. This character of testimony could not be introduced against appellant under the guise of impeachment. It was a matter with which he had no connection. The occurrences happened in his absence. And besides, it was

but an expression of opinion on her part in regard to her fear of appellant.

In another bill it is made to appear that on Sunday, after the death of deceased, a grave was being dug for the purpose of interring the body of deceased. There were several negroes present, among them, appellant, who was sitting by the side of one Madden, looking in the grave. Witness Marse testified that he and Wright also went to the grave and when within about fifteen feet Wright said, in a conversational tone rather loud, "that dam negro killed that woman." That appellant dropped his head, got up, and walked around the grave and went somewhere not noticed by the witness. That there was nothing said in reply by anybody, and nothing more was said on the subject. Various objections were urged to this testimony. Without going into the falsity of this statement by the witness, as gathered from the testimony of other witnesses, we are of opinion that this statement was not admissible. It seems that all those present were negroes, and there was nothing in this remark which pointed out or particularized appellant, nor that it was said in such manner as to call it to his attention, or to indicate to him that he was the party referred to and called upon to make a statement. Felder v. State, 23 Texas Crim. App., 477. To entitle the State to introduce in evidence the declarations of bystanders, it must be clearly shown that defendant understood himself to be accused of the criminal act committed, and the circumstances must have been such as to require of him a response; and even under this character of case, the testimony being properly admitted, the court should instruct the jury as to the legal functions or bearing of this evidence. Under the ruling in the Felder case, we think this testimony was improperly admitted.

The remarks of the county attorney with reference to the witness Joe Ashley will not be repeated upon another trial, and it will not be discussed.

Attached to the motion for new trial is the affidavit of R. W. Mitchell, who was foreman of the jury that convicted appellant. While considering their verdict he states that argument was made that appellant ought to have brought before the jury Joe Bowman as a witness. It seems that Joe Bowman had left the State, and was placed in such relation to the facts of this case that his testimony may have been of more or less cogency. But whether this be true or not, we believe the jury should not have used the absence of Bowman as evidence against appellant. It was further contended that appellant should have shown the whereabouts of Bowman on the night of the supposed homicide. This should not have been used against appellant. If living in the same neighborhood of the homicide Bowman's whereabouts were not accounted for, as it seems the other witnesses were, this may have been a fact in favor of instead of against appellant. It was also used by the jury as an argument in their retirement that appellant should have

produced as a witness his 9-year-old stepdaughter, who was in the house where her mother was slain on the night of the alleged homicide. If as a matter of fact this little negro girl was in the house where her mother was slain, and had sufficient intelligence to·make a competent witness under the peculiar facts of this case, it was obligatory on the State to produce that witness before the jury. This is a case of circumstantial evidence, not of a cogent character, and the main criminating facts testified to by the accomplice, Beulah Crosby, which were to the effect that she had been asleep before 9 o'clock. She aroused about that time, as well as she could guess, and saw appellant leave the room where they were sleeping; and later on he returned about the hour of 4 in the morning. This was entirely guesswork on her part as to time, because she had been sleeping and waking up at intervals during the night. To say the least it was guesswork as to time, and under such circumstances is very doubtful testimony, and very unsatisfactory. It was further used as an argument against appellant that as Beulah Crosby testified that appellant left the cabin on the night of the supposed homicide, as indicated by her testimony, and returned as before stated, about 4 o'clock, as supposed by the witness, that no one had denied such testimony; that no one had testified he did not leave the cabin as already testified by Beulah· Crosby. It is urged and insisted that this is a comment on the failure of appellant to testify in his own behalf. Under the peculiar circumstances, we believe this contention is correct. The witness Crosby locates herself and appellant in the room where they slept, and her testimony excludes the presence of anyone else. Under this state of facts there was no other witness who could have possibly testified that appellant did not leave the room that night, except himself. We believe this was a comment upon his failure to testify, and that it was used adversely to him.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*