## Fred Ritter v. The State.

### No. 6626. Decided March 8, 1922.

### Rehearing Denied June 21, 1921.

**1.—Evidence—Conspiracy—Silence of Defendant—Rule Stated.**

It is well settled that it is error to admit in evidence a defendant's silence touching declarations made in his presence, unless such statements in effect amount to an accusation against him, and are of a character calling on him to make reply. Following Crowell v. State, 56 Texas Crim. Rep., 491, and other cases, but conceding the admissibility of the statement made in the presence of defendant, his silence was at most but a circumstance and not a definite confession of guilt. Following Hill v. State, 11 Texas Crim. App., 132, and other cases.

**2.—Same—Circumstantial Evidence—Charge of Court—Requested Charge.**

Where the evidence of both the conspiracy and presence is extremely weak and meager, and from the facts as portrayed by the State's witnesses, it is plain that the appellant took no actual part in the homicide, and the conversation between other parties in defendant's presence was consistent with defendant's innocence, the evidence did not overcome the hypothesis of appellant's absence at the time of the homicide, and the requested charges seeking to present these defensive theories in an affirmative way should have been submitted, and a refusal to do so was reversible error. Following Martin v. State, 57 Texas Crim. Rep., 264, and other cases.

**3.—Same—Rehearing Evidence—Former Trial—Co-defendant.**

Testimony given by defendant in a former trial against another party could not be considered in a subsequent trial against him unless the same was admissible against the defendant in the instant trial.

Appeal from the District Court of Collin. Tried below before the Honorable F. E. Wilcox.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*John Doyle* and *Hughston & Neilson*, for appellant.—Cited cases in opinion.

*R. G. Storey*, Assistant Attorney General, and *A. M. Wolford*, for State.—Cited cases in opinion.

MORROW, PRESIDING JUDGE.—Appellant was convicted of murder; punishment fixed at confinement in the penitentiary for a period of ten years.

The deceased, Stockwell, was killed on the public square at McKinney, Texas, on the evening of the 11th day of June. The cause of his death was a gun-shot wound, taking effect in his breast and going through his body.

The evidence shows the shot to have been fired by J. C. Martin. His conviction for the offense was affirmed. See No. 6416, recently decided but not yet reported.

The eyewitness Rutledge described the tragedy and declared that soon after the deceased was killed he saw Lute Bevil and another approach Martin and take hold of him, but that he did not see appellant present.

The witness, Melton, for the State, said that he was in town on the night of the homicide; that he afterwards went to the home of Mrs. Ritter, appellant's mother, some distance from the town, and that while there, the appellant called for him and told him that Lute Bevil was in the road and wanted to see him. The witness went with appellant to see Lute Bevil, who said to the witness: "They have killed Buster Stockwell" and said: "You was up there, wasn't you?"; that the witness said: "Yes, I was there;" that Bevil said further: "Fred said you all wasn't up there, that that was not you all up there, but I knew that you were." Bevil said that he wanted to use Melton as a witness, and then detailed a plan to have the witness falsely state that he had gotten a pistol on the street where the deceased had dropped it. The witness said that appellant was silent during this conversation; that he started to say something when Bevil said to him: "I am a better schemer than you are, I will plan this whole thing myself."

As revealing Melton's version of his conversation with Bevil, the following questions and answers are quoted from the colloquy between him and the State's counsel: Q. Mr. Melton, I understood you, on cross-examination this morning, to say that Lute said that they had killed Buster Stockwell, now give Lute's exact words to the jury?" A. He says, "Cleave." He said, "Cleave killed Buster Stockwell." Fred Ritter was present when he said that and no one else but Lute and me." Q. He said, "They have killed Buster Stockwell?" A. Yes. Q. Didn't call any names? A. And he said, "Cleave did."

Q. He said, "We have killed Buster Stockwell, Cleave killed him?" killed him, after he said that." Q. Now, when he said that Cleave Martin did it, did he say that Cleave did the shooting or what did he say? A. He said that "Cleave killed him." Q. Which did he say first, "Cleave killed him" first or did he say the other first? A. He said "we" first. Q. And then what did he say about Cleave? A. He said, "Cleave killed him." Q. Now, if I understand it, the first thing that he said was, "We have killed Buster Stockwell," and you said, "who did?" A. No, I never said, "Who did." Q. Well, what was the next thing said? A. He said, "Cleave had killed him." Q. He said, "We have killed Buster Stockwell, Cleave killed him?" A. Yes.

On cross-examination, the following questions and answers portray the testimony of the witness: Q. He (Bevil) said, "They have killed Buster Stockwell?" A. Yes. Q. Didn't call any names? A. And he said, "Cleave did." Q. And you asked him who killed him? A. No, he said, "Cleave killed him," after he said that. Q. He says, "They have killed Buster Stockwell?" A. Yes. Q. And then he said, "Cleave killed him?" A. Yes. Fred Ritter never said anything.

The witness testified to other efforts on the part of the appellant, Lute Bevil and J. C. Martin to induce him to fabricate testimony concerning the possession of a pistol by the deceased at the time of the homicide, and that Lute Bevil said: "Fred was up there when the shooting occurred."

Appellant's wife was a sister of J. C. Martin, and Lute Bevil was a brother-in-law of Martin. Appellant's wife testified that she had been assaulted by the deceased, and that she had communicated this fact to the appellant and to Martin prior to the homicide and that they had expressed their intention of going to McKinney, the county seat, for the purpose of causing the arrest of the deceased. The facts pertaining to this matter are detailed at some length in Martin's case, supra.

It is upon these facts that the prosecution founds the theory that the appellant, Martin and Bevil had entered into a conspiracy to kill the deceased, and that the appellant was present at the time the homicide took place. Touching the evidence of appellant's presence, the State stresses the statement attributed by Melton to Lute Bevil in the presence of the appellant, in which Bevil was quoted as saying: "We have killed Buster Stockwell." The State advances the proposition that appellant, being present at the time and remaining silent when Bevil made this remark, the term "we" embraced them both. If we comprehend the testimony, Bevil, in the same breath that he said: "We have killed Buster Stockwell," also said: "Cleave (meaning Cleave Martin) killed him."

We quote from a text-writer: "The statement or accusation must

be direct, and of a character that would naturally call for action or reply, and must relate to the particular offense charged, and must be addressed to, and intended to affect, the accused, and not arise in conversation or discussion between third parties; nor, generally, is such silence deemed to be an assent when it is explicable on other ground than those of consciousness of guilt.'' (Wharton's Criminal Evidence, Sec. 680.)   Supporting the text, the author cites Crowell v. State, 56 Texas Crim. Rep., 491, and other cases.

From the opinion of this court, written by Judge Ramsey, in the case of Crowell v. State, we quote: "It is well settled that it is error to admit in evidence a defendant's silence touching declarations made in his presence, unless such statements in effect amount to an accusation against him, and are of a character calling on him to make reply.   2 Wharton on Evidence, sec. 1138; 1 Greenleaf on Evidence, Secs. 197, 199, 200 and 233; Loggins v. State, 8 Texas Crim. App., 434; Felder v. State, 23 Texas Crim. App., 477; Ex parte Kennedy, 42 Texas Crim. Rep., 148; 57 S. W. Rep., 648; Skelton v. State, 51 S. W. Rep., 944; Sauls v. State, 30 Texas Crim. Rep., 496; Long v. State, 13 Texas Crim. App., 211; Hanna v. State, 46 Texas Crim. Rep., 5; Gonner v. State, 17 Texas Crim. App., 1; Ex parte Wilson, 47 S. W. Rep., 996; Baker v. State, 45 Texas Crim. Rep., 392; and Commonwealth v. Harvey, 1 Gray, 487."

Conceding the admissibility of the statements made in the presence of appellant, his silence was at most but a circumstance, not a definite confession of guilt.   Hill v. State, 11 Texas Crim. App., 132; Eckert v. State, 9 Texas Crim. App., 106; Conner v. State, 17 Texas Crim. App., 15; Willard v. State, 26 Texas Crim. App., 130; Trijo v. State, 45 Texas Crim. Rep., 131; Harris v. State, 15 Texas Crim. App., 638; Wigmore on Evidence, Vol. 2, p. 1255, sec. 1071.   The learned trial judge classified the case as depending upon circumstantial evidence alone and so instructed the jury.   In the status of the case, not only the conspiracy to kill, but the presence of the appellant was essential.   The evidence of both the conspiracy and presence is extremely weak and meager.   The eyewitness relied on by the State to prove the offense, not only does not testify to the presence of the appellant, but tends strongly to negative that essential matter.   The homicide took place upon the street of McKinney, the county seat, early in the night.   Rutledge saw the homicide, saw Martin when he pulled his gun and fired the first shot, saw him pursue the deceased, and also saw the deceased fall.   He knew the appellant but did not see him.   Rutledge said: "I did not see anyone else there at all until he was shooting the gun and then I seen a fellow with a white shirt on and Lute Bevil come from towards the Court House and took hold of him.   Two men came from towards the Court House.   One was Lute Bevil and one had a white shirt on and I don't know who he was. I went down on the square then, and the fellow who had the gun said,

'Take the gun, I don't want it,' and I said, 'I don't either,' and Lute said, 'Keep the gun; you will have to take it over to the Court House.' They then came on towards the Court House and that is the last time that I seen them; I never did see them any more. . . . I knew Fred Ritter at that time but I did not see him anywhere that night. I did see Lute Bevil. I did not recognize the other man that had the gun. . . . Immediately after that last shot was fired, I saw Lute Bevil coming from on the square, going towards the man doing the shooting and walking rapidly and got up to him while he was snapping his pistol at the man on the ground; him and another fellow grabbed him; I don't know which grabbed him first, but they both took hold of him about the same time. . . . After he was grabbed, he did not try to do any more snapping of his pistol but stopped as soon as they took hold of him. He kept it up until they took hold of him and then he told me to take his pistol. I was not acquainted with Martin; I did not know him. . . . I did not see Fred Ritter at all and do not know whether he was there or not. I did not see anybody else grab or hold this fellow or try to interfere in any way with his getting away.''

The witness Melton was there at the time and nearby the scene of the homicide, in company with his wife and appellant's mother and wife. He and other eyewitnesses testified but none to appellant's presence. The record contains no direct testimony to the effect that the appellant was in the town of McKinney on the night the homicide took place. No circumstance points to his presence unless it be the conversation detailed by Melton.

In Article 78 of the Penal Code, it is said: ''Any person who advises or agrees to the commission of an offense, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act.''

Under this statute appellant is convicted as a principal offender. He was not charged as an accomplice.

From the declaration of Bevil in appellant's presence, and from the facts as portrayed by the State's witnesses, it is plain that the appellant took no actual part in the homicide. The testimony for both the State and the appellant is to the effect that the appellant was not one of those who was seen present at the time of the homicide. On the contrary, they point to his absence. Appellant's silence during the conversation between Bevil and Melton may be explainable upon the theory that its nature was not such as to demand of him an explanation for the reason that Bevil himself at the time explained his meaning in a manner consistent with appellant's innocence. Tested by the rules applicable to circumstantial evidence, the evidence does not overcome the hypothesis of appellant's absence at the time of the homicide; nor are we able to discern evidence of sufficient cogency to establish his connection with an antecedent agreement to kill the

deceased. Assuming, however, that there is to be found in the record sufficient evidence to support a finding against the appellant upon both of these matters, it is of a character which demanded of the trial court extreme caution in so framing his charge so as to conserve the rights of the appellant. In a negative way in the main charge, the jury were told that unless they believed that Ritter was present, they should acquit him, and they were also told in the same manner that unless he had been a party to a previous agreement to kill the deceased, he must be acquitted. Special charges were requested seeking the presentation of these defensive theories in an affirmative way. That is to say, that although they might believe that the appellant was present at the time of the homicide, he could not be convicted unless he had previously agreed to the killing, and that even if he had previously agreed to it, he could not be convicted unless he was present. In other words, that as a predicate for conviction, it was necessary to affirmatively show that the appellant made the agreement with Martin to kill Stockwell and that he was present when the deceased was killed.

From what has been said, it follows that, in our judgment, the evidence being wholly circumstantial, does not point to the guilt of the appellant with the degree of certainty that would justify an affirmance of the judgment. If upon another trial the same issues arise, the charge, in an affirmative manner, should submit the defensive theories. The precedents upon this subject are cited in Duncan v. State, 90 Texas Crim. Rep., 479, 236 S. W. Rep., 468; Carreon v. State, 90 Texas Crim. Rep., 572, 236 S. W. Rep., 986. Among them are Porter v. State, 48 Texas Crim. Rep., 301; Martin v. State, 57 Texas Crim. Rep., 264.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 21, 1922.

HAWKINS, Judge.—The State has presented a motion for rehearing in which other testimony than that set out in the opinion is mentioned which was relied upon by the State as tending to show the presence of appellant at the time of the homicide. This evidence was not overlooked by us upon the former consideration to the case. We only referred to that portion which seemed most pertinent to the issue under discussion.

If the record in the Martin case shows that upon that trial appellant testified to his presence at the homicide, it could not be considered in a subsequent trial against appellant unless his testimony given in the Martin trial was properly provable in the prosecution against appellant, and was so proven, and it so appeared from the record now before us.

Believing a correct disposition was made of the case in our original opinion under the record, the State's motion for rehearing must be overruled.

*Overruled.*