BILL TUCKER v. THE STATE.

No. 8305.   Decided June 25, 1924.

1.—Murder—Evidence—Declarations of Third Party—Waylaying.

Where, upon trial of murder, the court permitted the witness Powell to testify over objection of defendant that when he and the State's witness Williams heard the shooting and hollering, that the latter said he wondered what was the matter, and then stated that in a conversation which he had had with the defendant a short time before in which he said the latter came very near shooting him by mistake, the same is reversible error, as neither of the witnesses were participants in the tragedy and were some distance away, and the effect of the introduction through the mouth of Powell, of the statement made by Williams to Powell would legitimately be to strengthen the probability that the jury would believe Williams' testimony as to what occurred prior to the shooting, and that, therefore, deceased was waylaid.

2.—Same—Impeachment of Witness—Predicate. ·

   This court is of opinion that the trial court committed no error in al-
lowing the predicate to be laid for the impeachment of the wife of appellant,
by asking her if she did not make·certain statements at a certain place in
the presence of certain witnesses to the effect that appellant killed the de-
ceased for nothing, etc.

   Appeal from the District Court of Bowie.  Tried below before the
Honorable Hugh Carney.
   Appeal from a conviction of murder; penalty, twelve years im-
prisonment in the penitentiary.
   The opinion states the case.

   *Johnson & Waters,* for appellant.—On question of declarations of
third party: Felder v. State, 5 S. W. Rep., 145; Casey v. State, 97
id., 496; Oliver v. State, 159 id., 235; Clements v. State, 134 id.,
728.

   *Tom Garrard,* Attorney for the State, and *Grover C. Morris,* As-
· sistant Attorney, for the State.

   LATTIMORE, JUDGE.—Appellant was convicted in the District
Court of Bowie County of murder, and his punishment fixed at twelve
years in the penitentiary.
   That appellant shot and killed deceased is not disputed.  The men
were neighbors.  The testimony as to what led up to and caused the
killing is conflicting.  In view of our disposition of the case we do
not deem it necessary to set out the facts at length.  The State con-
tended that appellant took a shotgun and placed himself behind a
tree near a road and that when deceased came along appellant shot him
a number of times, and that the killing was upon malice and premedi-
tion.  After the killing appellant went up the road to where Messrs.
Powell and Williams were and told them there was a dead man down
there.  Appellant's theory of the case was self-defense, and he as-
serted that deceased had taken away from him the affections of his wife
and had threatened to kill him, and that on the occasion in question
he met deceased in the road and the latter began to dismount from his
horse accompanying this movement with a threat to then kill appel-
lant.
   Mr. Williams testified that on the morning of the homicide he was
going up the road past the place where the homicide occurred later,
looking for some horses and that at the place of said occurrence ap-
pellant stepped out from behind a tree  and presented a gun cocked
at him but upon discovering that it was not the man he was after, that
appellant told him that he had intended to scare another man and
for him to go on up the road.  Williams went on up the road about

two hundred and fifty yards to a point where he met Mr. Powell. He accosted Powell and asked him in reference to the lost horses and about the time the conversation began a shot was heard from down about where Williams met appellant and the voice of a man "hollering" was heard. Both Williams and Powell testified that the shooting continued until a number of shots were fired and that the parties appeared to be getting farther away from them while the shooting was in progress, and both agree that appellant came up to them presently and reported the fact that he had killed a man.

Mr. Powell was permitted to testify over objection that when he and Williams heard the shooting and the hollering, that Williams said he wondered what was the matter and that he stated to Williams it sounded to him like somebody was shot, and that Williams then said: "A man come out from behind a tree with a gun and held me up when I was coming along the road and asked me where I was going and I said I was going to hunt some horses, and he said 'I stopped here to scare a man but got the wrong man,' and Williams began to shake and shook until I asked him to get down off of his horse and go in the house and let me make him a fire." This was about five minutes after Williams arrived at the place where witness was. The learned trial judge qualifies the bill of exceptions presenting complaint of this matter by the statement that he admitted it as res gestae. We regret that we cannot agree with him upon the admissibility of the testimony. Neither Powell nor Williams were participants in the tragedy. They were some distance away. The effect of the introduction through the mouth of Powell, of the statement made by Williams to Powell would legitimately be to strengthen the probability that the jury would believe Williams' testimony as to what occurred when he says appellant stepped out from behind the tree and threw the gun down on him, apparently thinking him to be deceased. This was a most material issue and if the testimony of Williams as given was true, clearly the case would be an assassination if appellant was waylaying deceased. This was pointedly denied by appellant while a witness on the stand, he testifying that he was going down the road carrying his gun and met a man who inquired about some horses but that he made no statement to said man in regard to what he was doing or where he was going and did not say to him that he was waiting to scare a man. In addition to denying the testimony of Williams as to then what occurred, appellant further said that he was going on down the road when he met deceased and the latter got off his horse to attack him, as above referred to.

We know of no decisions applying the doctrine of res gestae to the exclamations or statements of bystanders or third parties which go to such an extent as to include statements made under the circumstance and of the import as embraced in the testimony of Mr.

Powell. A somewhat similar proposition was involved in Felder v. State, 23 Texas Crim. App., 477; Ex Parte Kennedy, 57 S. W. Rep., 648; Willis v. State, 27 S. W. Rep., 969; Baker v. State, 45 Texas Crim. Rep., 396; Underhill's Crim. Ev., Sec. 168. Believing the learned trial judge fell into error in admitting this testimony and that its effect was necessarily most harmful to the accused, we are constrained to direct a reversal for this error.

We are of opinion that the court committed no error in allowing the predicate to be laid for the impeachment of the wife of appellant by asking her if she did not make certain statements at the home of Mrs. Haggard in the presence of Mrs. Pitts, Mrs. Lock and Mrs. Goodman to the effect that appellant killed the deceased for nothing and because he would not put up on him to make a crop. She was introduced as a witness in her husband's behalf and gave testimony very damaging to the State in regard to improper conduct on the part of deceased toward her. Her impeachment by proof of contradictory statements made by her relative to the cause of the killing as known to her after laying said predicate was proper. We will not discuss the bill of exceptions complaining of the argument because same will not likely occur upon another trial,

For the error above mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*