Joe Zimmer v. The State.

No. 1402.   Decided December 6, 1911.

**1.—Murder—Evidence—Arrest—Declaration of Defendant.**

Where, upon trial of murder, it appeared from the record on appeal that the sheriff and his deputy took charge of the defendant and his brother and placed them in an automobile and carried them to the scene of the homicide, this constituted an arrest although no expressions were used by the officers that the parties were under arrest, and declarations by either were not admissible in evidence under the circumstances, both being indicted for the same offense.

**2.—Same—Evidence—Rule Stated.**

Admission of additional illegal evidence over the objection of the accused is not cured, although the same character of evidence had been previously admitted without objection. Following Boatwright v. State, 42 Texas Crim. Rep., 443, and other cases.

**3.—Same—Evidence—Rebuttal—Illegal Testimony.**

After the admission of illegal evidence over objection of defendant, the error is not cured because defendant has to make the best of the situation and resort to rebutting evidence. Following Dawson v. State, 38 Texas Crim. Rep., 14, and other cases.

**4.—Same—Evidence—Charge of Court.**

Where, upon trial of murder, testimony was admitted as to certain statements made by defendant's brother to the defendant with reference to the difficulty, which differed from defendant's theory of the transaction, and which the State contended were made in the hearing of defendant and not denied by him, whereupon defendant introduced testimony to the effect that he did not hear his brother make such statement, thereby raising an issue material to his defense, the court should have submitted same to the jury.

**5.—Same—Evidence—Argument of Counsel.**

Where, upon trial of murder, after the defendant had testified as to the character of the iron pipe with which the deceased had attempted to assault and strike defendant's brother at the time defendant shot at deceased, defendant—having resumed his seat by his counsel—was then asked whether the iron pipe then brought into court by the sheriff was the one in question, which defendant answered in the affirmative, this circumstance placed the matter in evidence, and it was error not to permit defendant's counsel to comment thereon, especially as State's counsel had been permitted to do so.

**6.—Same—Practice—Witness.**

The mere location of a witness when testifying can not affect his testimony and prevent it from being considered by the jury; although it is better practice to have the witness testify from the regular witness seat.

**7.—Same—Charge of Court—Place of Confinement.**

Where, upon trial of murder, it developed that the defendant was less than sixteen years of age at the time of the trial, and that issue was submitted, the court should have charged the jury that if they found the defendant to be less than sixteen years of age, to assess his punishment by confinement in the State Institution for the Training of Juveniles instead of the House of Correction and Reformatory.

**8.—Same—Reforming Judgment—Verdict.**

Where the verdict of the jury confined defendant in the House of Correction and Reformatory, the court could not so reform the judgment entered upon this verdict as to confine the defendant in the State Institution for the Training of Juveniles. Following Evans v. State, 35 Texas Crim. Rep., 485.

Appeal from the District Court of Victoria. Tried below before the Hon. John M. Green.

Appeal from a conviction of manslaughter; penalty, three years confinement in the House of Correction and Reformatory, which was amended to the State Institution for the Training of Juveniles.

The opinion states the case.

*Rosborough & Koch,* for appellant.—Upon the question as to the place of confinement: Ragsdale v. State, 61 Texas Crim. Rep., 145, 134 S. W. Rep., 234.

Upon question of admitting statement of defendant's brother and the court's failure to properly limit said testimony: Ex Parte Kennedy, 57 S. W. Rep., 648; Felder v. State, 23 Texas Crim. App., 477.

Upon question of refusing defendant's counsel to argue upon the

evidence with reference to the iron pipe in response to State's counsel: Leslie v. State, 49 S. W. Rep., 73; Garza v. State, id., 103.

Upon question of court's charge on place of confinement: Gaither v. State, 21 Texas Crim. App., 527; Evans v. State, 35 Texas Crim. Rep., 485.

C. E. Lane, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter, and given three years in the State Institution for the training of Juveniles.

There is no question raised in regard to the issues of murder, an acquittal having been had in both degrees, and in fact there is no evidence in the case which would indicate murder as we understand this record. The theory of the State's testimony does not show an offense higher than manslaughter, while that of the appellant was one of defense of his brother. Appellant's contention was that he shot the deceased when he was, in the act of striking his brother with a heavy piece of iron piping. The theory of the State was that the shot was fired immediately after the separation of the parties in which appellant's father had been knocked down and hurt, and the brother also had been engaged in the difficulty.

1. The bills of exception are in a very confused condition, not setting forth clearly exactly what was meant by the recitals of the bills. Some of the bills of exception challenge the introduction of the statement made by appellant's brother after he and appellant had been taken charge of by the sheriff and placed in an auto, as well as to the objections taken and the manner of taking them. One of the bills, for instance, recites that on the day of the homicide, the sheriff, Weisiger, his deputy, Hudler, and Sterne, went in an auto to the scene of the homicide; that in going to that place they met the defendant with his brother, Frank, coming to the town of Victoria; that they took charge of both and placed them in the auto; that defendant sat on the back seat between the deputy and the sheriff, while the brother, Frank Zimmer, occupied a seat in front with Sterne, who seems to have been the chauffeur. The witness further testified that while thus returning to the scene of the homicide, Frank Zimmer stated that defendant, Joe Zimmer, shot the deceased Emil Mueller, while the latter was on top of defendant's father, beating him. Appellant, at the time this testimony was offered, objected to the admission of the same for the reason it was hearsay, and was a declaration of Frank Zimmer who was under indictment for the same offense. These objections were overruled by the court, and the testimony permitted to go to the jury. The court signs the bill with this statement: "Approved with the qualification: That it had been proved by the witness, R. S. Weisiger, without objection, that Frank Zimmer, in the presence and hearing of Joe Zimmer, on the day of the homicide, stated that when the shot

was fired, Emil Mueller, the deceased, was on his father, beating him, and that the defendant did not deny it, and later, when the State attempted to prove the same fact by the witness, Tony Hudler, counsel for the defendant, stated to the court that he supposed the same objection made yesterday (referring to an objection made while Joe Zimmer was on the stand to the effect that the statement was irrelevant) goes to that. The court stated that he did not understand it that way, whereupon counsel for the defense objected on the ground 'that it was hearsay, and under the indictment, you can not prove what his statements were.' No objection was ever urged for the reason, nor was it ever shown, that any of the parties were under arrest at the time or in charge of an officer, further than they were riding in an automobile together with the officers and one Sterne." This is one of the bills. Practically the same matters are set forth in another bill to the evidence of Sheriff Weisiger. We would hardly think it a question for discussion or doubt that when the sheriff and his deputy, Hudler, took charge of Frank Zimmer and appellant and placed them in the automobile and carried them to the scene of the homicide, even under the circumstances stated in this bill, that they were in arrest. That is too clear for discussion. It was not necessary for the sheriff or Hudler either to use the expression that they had them under arrest. They stated facts that placed the parties under arrest and in their possession. It is questionable whether the objections that the testimony was hearsay and irrelevant sufficiently suggests the objection that they were not warned while under arrest. That phase of the matter will, therefore, not be discussed. The court seems to have been under the impression, from the qualification of the bill, that if this character of testimony had been erroneously admitted through the mouth of one witness, that that closed the mouth of the defendant as to any objection from the introduction of the evidence through another witness. This is not correct. Admission of additional illegal evidence over objection of the accused is not cured, although the same character of evidence had been previously admitted without objection. Peyton v. State, 32 S. W. Rep., 892; Boatwright v. State, 42 Texas Crim. Rep., 442. And it has been held that where the defendant introduced illegal evidence, this does not cure the admission of illegal evidence offered by the State when proper objections are interposed. Smith v. State, 52 Texas Crim. Rep., 27. It has been further held that after the admission of illegal evidence over objection, the error is not cured because the defendant had to make the best of the situation and resort to rebutting evidence to destroy or explain the effect of the illegal evidence. Dawson v. State, 38 Texas Crim. Rep., 9; Red v. State, 39 Texas Crim. Rep., 414; Attaway v. State, 41 Texas Crim. Rep., 395.

If the appellant heard the statement of his brother, to which objection was urged on the grounds stated, it was not error perhaps on the part of the court to admit it. Of course, if being under arrest, had been urged, it should have been sustained. The testimony was, under

the facts of this case, inculpatory. Appellant's theory of his case and his testimony was to the effect that he shot deceased because he was in the act of striking his brother with a heavy piece of iron piping. The statement of the brother, Frank, while they were in the auto was that appellant shot deceased while he was making a vigorous assault upon his father. The objection that the testimony was irrelevant is in the nature of a general demurrer, and if the testimony, in the face of that objection, was admissible for any purpose, the objection would not be well taken. General objections such as the testimony is irrelevant, immaterial or incompetent, are in the nature of a general demurrer, and would not be well taken if the testimony objected to could be used for any purpose legitimately. If it could not be, then the objection would be well taken, and the testimony on such objection should be excluded. This question has been the subject of a great number of decisions, and we deem it unnecessary to go into an elaborate discussion of that matter. We scarcely think either the objection that it was hearsay or irrelevant was of such nature as to require a reversal of the judgment on account of its admission. Upon proper objection, the evidence ought to be rejected.

However, the question comes in a different form when the case was submitted to the jury. Appellant introduced evidence to the effect that he did not hear his brother make the statements, if they were made, and having denied hearing them, it became an issue before the jury of serious import to him. The evidence upon that question was sharply contested, the two officers testifying, in substance, that he was in position to and perhaps did hear the remark of his brother to the effect that he, appellant, shot deceased while he was attacking his father, instead of appellant's view of the case, that he shot in defense of his brother. The statement of this would indicate the testimony was quite important and inculpatory. This issue was not submitted to the jury, and that question is properly raised for review. A charge should have been given by the court instructing the jury that ur⁻ s appellant did hear it, or there was a doubt as to whether he hear , then they should not regard it in making up their verdict. Fel⸍ r. State, 23 Texas Crim. App., 477; Ex Parte Kennedy, 57 S. W. ., 648; Stewart v. State, 26 S. W. Rep., 203; Wills v. State, 22 I. Rep., 969; Skelton v. State, 51 S. W. Rep., 943; Baker v. S ₅ Texas Crim. Rep., 392, 77 S. W. Rep., 618; Hanna v. State, ⸍ as Crim. Rep., 5, 79 S. W. Rep., 544.

2. Bill of exception No. 3, in substance, shows that durin⸍ ime the testimony was being introduced, the defendant testified ʋhen he fired the shot which killed deceased, the deceased was g an assault upon his brother, Frank Zimmer, with an iron pi ι was attempting to strike the said Frank Zimmer with the while Frank Zimmer and Albert Mueller were engaged in ⸍ The sheriff was then requested by counsel for defendant to ₙto the court room the iron pipe in question, which was about ₑet long

and an inch and a quarter in diameter, having a coupling joint at one end, and the pipe was brought in by the sheriff and handed to defendant's counsel. Thereupon, defendant's counsel, holding the pipe in his hand in the presence and hearing of the jury, asked the defendant the question whether or not that was the pipe with which the deceased was attempting to assault and strike Frank Zimmer, the brother of appellant, at the time the shot was fired. In response to this question the appellant answered that it was the pipe. Thereupon the pipe was set down against the judge's desk by counsel for defendant, and remained until time for the adjournment of the court. In the argument by defendant's counsel, J. M. Roseborough, attempted to discuss to the jury the attitude of the deceased at the time he was shot by defendant, and the fact that he was attempting to assault defendant's brother with said pipe, and in doing so, he attempted to illustrate to the jury by taking the pipe in his hands, the position of the deceased at the time the shot was fired, and to discuss the character of the instrument used by the deceased in making said assault upon defendant's brother while exhibiting same to the jury, thereupon, upon objection of the State's counsel, the court refused to permit said counsel to exhibit said pipe to the jury or to illustrate with it the attitude of the deceased at the time that the shot was fired, and refused to permit defendant's counsel to discuss the size of the pipe or the character of the same to the jury, upon the ground as held by the court, and as urged by the State's counsel, that the pipe was not introduced in evidence before the jury, to which ruling of the court in refusing to permit the defendant's counsel to discuss the pipe in question, and its size and character, and in refusing to permit defendant's counsel to illustrate with the pipe the position of the deceased at the time he was shot, defendant excepted, and tendered his bill of exceptions. This bill is approved by the court with this qualification: "That the sheriff brought an iron pipe into the court room and same was stood up against the judge's stand. Joe Zimmer had already testified in the case and had been excused and had taken his seat by counsel in the case. Geo. B. Amery then testified and defendant rested the case. The district attorney and county attorney asked permission of the court, which was granted, to consult a few minutes relative to the introduction of rebuttal testimony, and they left the court room. While they were gone and the court was engaged with his charge, counsel for the defendant, without the knowledge of and not in the hearing of the court, and without waiting for the return of the district attorney and county attorney, and without requiring Joe Zimmer to take the stand, asked Joe Zimmer the following question: 'Is that the pipe?' to which Joe Zimmer replied, 'Yes.' The stenographer made a note of this matter at the time and, while I can not state anything about it, for reasons assigned above, I give the defendant the benefit of the facts as shown by the stenographer's record in this bill. I refused to permit counsel for the defense to use the pipe in

argument because it had not been introduced in evidence, and I was not then aware that the pipe had been referred to and the question asked Joe Zimmer if that was the pipe after he had left the stand and after another witness had testified, as shown by notes made by the stenographer, as above explained. The size of the pipe and its length was clearly stated by Joe Zimmer in his testimony."

In order to show the real condition in regard to this matter, in connection with the introduction of the iron pipe, it is necessary to state another bill of exceptions, which is to the effect: The court refused to permit counsel for defendant to discuss and exhibit to the jury in the argument an iron pipe which was identified by defendant as that with which the deceased was attempting to assault his brother, Frank Zimmer, at the time the shot was fired, but permitted counsel, in his closing argument for the State, to comment upon the pipe then standing at the judge's desk in the presence of the jury, stating in his argument that there was no evidence as to where said pipe came from; that it was simply slipped into the court room to try to bolster up defendant's story, to which statements of State's counsel, at the close of his argument, defendant's counsel asked the court to note his exception. This bill is approved with this statement by the court: "That the iron pipe referred to was never identified by the defendant as that with which the deceased was attempting to assault and strike his brother, Frank Zimmer, within the knowledge of the court. I make qualification to bill of exception No. 3 a part of the qualification to this bill. Defendant never at any time excepted to the argument of State's counsel while same was being made and no request was ever made to the court to instruct the jury to disregard the argument. After all arguments had been closed and while the court was preparing to charge the jury, counsel for the defense asked the court to note his exception to the argument of the State's counsel relative to the pipe."

It will be seen from these statements of the bills of exception that the iron pipe was fully described by the defendant in his testimony before the jury, and that subsequently the court says after the defendant had left the stand and was sitting by his counsel, his counsel had the pipe brought into court before the jury, and without recalling appellant to the witness stand, had him to identify that as the pipe from the position then occupied by him, sitting by his counsel. We take it from these statements, which are endorsed by the judge, as being correct, as shown by the stenographer's report, the pipe was sufficiently before the jury and identified as the particular piece of pipe that the deceased was using at the time appellant shot. It would hardly be seriously contended that it was necessary to have the witness to take the stand under the circumstances simply for that purpose. He could identify it as well from where he was sitting by his counsel as he could from the witness stand. There is nothing so sacred about the particular seat the witness occupied in detailing his testimony as to require it to be excluded from the consideration of the jury. While

unusual, still the witness could have testified from his seat by his counsel as well as he could on the witness stand. The mere location of the witness would not have detracted from his testimony or prohibited him from giving his testimony, although it is usual for him to occupy a particular designated spot in the court room, which is usually known as the witness stand. We would further say in this connection, taking the two bills together, it is made prominent and certain that appellant's counsel was limited in his argument in an illegitimate manner from discussing the facts with reference to the iron pipe, in the manner indicated in the bill. Appellant had the right either by himself or his counsel to be heard in reference to all the facts placed before the jury, and to use any legitimate line of argumnt that would be justified under the evidence. The pipe was sufficiently identified as being the pipe used by deceased. It was fully described by the witness and identified by him as being the pipe. The court then was in error in not permitting counsel to discuss the matter as indicated by the bill. This error is intensified when it is shown that counsel for the State, in closing argument, discussed the matter, although appellant did not object to it at the time, as stated in the qualification of the judge. It is made to appear by the bill that counsel for the State did use the argument. That seems not to be questioned at all. The court qualifying the bill says no objection was urged to it until he was reading his charge. The court's qualification manifests the fact that counsel for the State did use the argument, and whether appellant excepted to it or not at the time, it does demonstrate the fact that the argument was made, and these bills demonstrate further that appellant's counsel was not permitted to argue the matter. These bills show such error in regard to this matter as would require a reversal of the judgment. The appellant had the right to be heard through his counsel.

3. The court, in his charge, among other things, gave the following:

"If, under the foregoing instructions, you find the defendant guilty, and assess his punishment at confinement for five years or less, then I instruct you to say by your verdict whether the defendant is more or less than sixteen years of age at this time, and if you find that he is not more than sixteen years of age, then you shall further say in your verdict whether the defendant shall be sent to the House of Correction and Reformatory or to the penitentiary."

This portion of the charge is attacked as being incorrect inasmuch as there is no such place as the House of Correction and Reformatory known as a place of punishment. The jury found the defendant less than sixteen years of age, and assessed his punishment at three years in the House of Correction and Reformatory. The proposition is that where a person is convicted of a felony, there are only two places at which he can be confined, viz.: the penitentiary or the State Institution for the Training of Juveniles. This charge was wrong. The

House of Correction and Reformatory has been abolished. For a discussion of the proposition here contended for by appellant, see Evans v. State, 35 Texas Crim. Rep., 485. The remarks of Judge Henderson in that opinion are applicable to the question here.

4. It is also contended that the court erred in another matter. After the verdict had been returned and the judgment entered assessing the punishment in the House of Correction and Reformatory, and after the sentence had been pronounced by the court, and entered upon the minutes, assessing the punishment as before stated, in the House of Correction and Reformatory, over objection of defendant made at the time, the court, of his own motion, changed the judgment as already entered upon the minutes so as to assess the punishment at three years in the State Institution for the Training of Juveniles, and likewise, over defendant's objection, resentenced defendant so as to change his punishment from three years in the House of Correction and Reformatory to the State Institution for the Training of Juveniles. This is alleged as error. We are of opinion, under the Evans case, supra, the contention is well taken. An inspection of the judgment shows that while the court changed the sentence that the judgment and sentence do not follow the verdict of the jury. The verdict of the jury confined appellant to the House of Correction and Reformatory. The judgment entered upon it confines him in the State Institution for the Training of Juveniles. These matters will not occur upon another trial, and are not further mentioned.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*