JOHN BONATZ v. THE STATE.

No. 5351.   Decided May 14, 1919.

1.—Theft—Embezzlement—Principal—Agent.

Where, upon trial of theft of property over the value of fifty dollars from the possession of the depot agent of a Railway Company, the defendant contended, that the offense was embezzlement instead of theft and that he should be acquitted of theft. Held, that said contention is untenable. Davidson, Presiding Judge, dissenting.

2.—Same—Evidence—Confession—Arrest.

Where, upon trial of theft, it appeared from the record on appeal that defendant was virtually in custody of the officers and under arrest for the

alleged theft at the time he made the alleged confession, which was in-
troduced in evidence, the same was reversible error, and this although the
bill of exception was somewhat meager but nevertheless pointed out that
.there was no warning and that his statement was not reduced to writing.
Following Jones v. State, 52 Texas Crim. Rep., 207, and other cases.

### 3.—Same—Arrest—Rules Stated.

It is well settled that the defendant may be shown to be under arrest
by the surrounding facts and circumstances, and it is not neccessary that
the officer should make an arrest in formal words. Following Nolan v.
State, Texas Crim. App., 599, and other cases.

Appeal from the Criminal District Court of Harris. Tried below
before the Hon. C. W. Robinson

Appeal from a conviction of theft over the value of fifty dollars;
penalty, two years in the penitentiary

The opinion states the case.

*Wander & Rogers* and *J. M. Gibson,* for appellant.—On question
of embezzlement and theft; Flagg v. State, 51 Texas Crim. Rep.,
602; McKnight v. State, 70 Texas Crim. Rep., 470.

*E. A. Berry,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft
of property over the value of fifty dollars from the possession of L.
N. Lyons.

Ownership was alleged in Lyons, depot agent of the San Antonio
and Aransas Pass Railroad Company at Houston. Appellant was
a clerk, "foreman of the warehouse." His duties were to check
goods that came on trains into the warehouse and out when shipped
to their destination. A box of goods came in a car. Appellant, in
pursuance of his duty, checked the box out of the car into the
warehouse. From the warehouse the box of goods was to be trans-
ferred to another car going west, to Hertz, the consignee, at Yoakum.
it was discovered that the box was not accompanied by a freight
bill. It was put in what Lyons called "an over pile." This over
pile seems to be stored in the warehouse when not accompanied by
a freight bill. The State's theory of the case was that the box was
sent by appellant from the over pile or warehouse to Mintz, a mer-
chant in Houston, by a couple of negro truck drivers. The State's
theory was that there had been a previous understanding between
Mintz and appellant that appellant would send him goods. Mintz
received them under such circumstances as to show he believed the
goods were fraudulently acquired. He took the goods from the
box, put them in a room attached to his business house in which
he stored hay, and there covered them with hay. The goods were
bolts of gingham. The officers arrested the two negroes, who
told them where the goods were. They took the negroes and went to

Mintz's and found the goods. Mintz denied having them, but his wife told him to tell the officers about the goods, which he finally did. These officers took the negroes and Mintz to the depot where appellant was at work. A conversation occurred there between appellant and Herbst, an agent and detective in the employ of the San Antonio & Aransas Pass Railroad Company, in which Herbst claimed that appellant made a confession. Appellant denied taking the .goods, and said he made no confession to Mintz with reference to taking the goods; he said that after .the negroes carried the goods to Mintz's house there came · up some conversation about the negroes bringing him some goods, but that he had nothing to do with taking the goods, nor did he inform Mintz that he would take or send him any goods. He also denied turning the goods over to the negroes at the depot, and in this he is to some extent supported by the witness Williams, also an employe of the railway company. working at the depot. Williams' testimony indicates that appellant about 12 o'clock went to Mintz's restaurant for the purpose of getting lunch, which he was in the habit of doing for his mid-day lunch. Williams says that at the time he saw appellant at the depot, and about the time he left, the box was in the depot, and after defendant left he saw the box on a truck controlled by the negroes. They hauled it away. This is a sufficient statement of the case to review the questions presented.

It is contended by appellant the State's case did not make one of theft but of embezzlement under the general statute which provides any agent, clerk or employe of a corporation or individual who shall fraudulently appropriate the property entrusted to him shall be guilty of embezzlement. The State meets this with the contention that appellant was the employe of Lyons, who had the control and management of the property for the company, and appellant's possession was that of servant or custodian. In other words, that he simply sustained the relation of custodian, and his appropriation of the property would, therefore, constitute theft. The writer is of opinion that appellant's contention should be sustained. There is no question that he came in possession of the property by lawful means, and only by reason of his employment. That he was specially employed to receive this property under such employment is shown specifically by the State. His appropriation of it would be as such agent or clerk of the company. This created a trust relationship. as his possession was thereby acquired. If there was fraud on his part it was not in receiving but in subsequent appropriation. The majority of the court are of opinion that the State's case is one of original theft.

There was a bill of exceptions reserved to the admission of what is contended by the State to be a confession. This bill recites that while the evidence for the State was being submitted and part of it

had been heard, the State showed by the testimony of the witnesses Lyons, Barnes, Pope, Williams, Mintz and Herbst that a certain box of dry goods consigned and shipped over the San Antonio and Aransas Pass Railroad Company, which box of dry goods arrived at the freight depot of said Railroad Company, at Houston, Harris County, Texas, had been conveyed on a dray from said depot by Barnes and Pope, which box had marked on it E. Hertz, or A. Hertz, Yoakum, Texas, during the month of May, 1918, to the store of Abe Mintz, in Houston, Texas and Pope and Barnes further testified that the goods were carried to Mintz's store at request of defendant, and Mintz having testified that the defendant had told him he would send some goods to him, the witness Herbst then testified that he had with him two police officers of Houston, to-wit: Goodson and Bryson, and that he and the officers took Mintz with him to the freight depot, where they found the defendant, that Mintz identified the defendant in the presence of witnesses and the officers; that the witness Herbst called defendant after he had been so identified to one side, from the officers and Mintz, and the defendant made an oral statement to him. To the introduction of this statement the defendant objected, because it appeared the defendant was in custody and under arrest for the alleged theft of the goods, that the defendant was under duress and legal restraint, and the statement, or confession, was not competent evidence against him, the same not having been voluntarily made after being first duly warned that whatever he might say could be used against him and not for him in the prosecution of said cause, and said statement was not reduced to writing and signed in the presence of two disinterested witnesses; that the same was incompetent and inadmissible, which objections were overruled. Witness then testified: "And I had stepped to one side, and the defendant stepped to one side, and there was no one right at me, and I asked the defendant what he done it for, and he said, 'I will admit it, I am caught. I needed the money, and thought I could get away with it.' When I was talking to the defendant I had stepped to one side, from both officers and Mintz, and there was no one right at me. I had stepped to one side, and he stepped to one side after Mintz told me he knew him. We had no warrant for his arrest and he was not arrested." On redirect examination this witness testified that defendant said: "Now you have me, what are you going to do with me?" "and I said here are the officers, I presume they will take you to the station, and they did."

The State's contention is that the predicate was not sufficient to sustain the objection; that the grounds of objection, as stated, are not verified as facts, and, therefore, the bill is insufficient to suggest or raise the question that the statement was not in writing, etc. We cannot agree with this contention. This bill does show on its

face, verified by the statement of Herbst, that there was no warning, and that the statement was not reduced to writing. Wherever the stated facts show that there was no written statement, then the grounds of objection are sufficient without a further statement that it was not in writing. All that is required is that the bill show on its face, either by direct statement or by the evidence itself as detailed, that it was not in writing. If the evidence as detailed shows that it was not reduced to writing, this would be a sufficient predicate for the objection. This statement does exclude the idea that there was any written confession. This witness testifies: "When I was talking to the defendant, I had stepped to one side, from both officers and Mintz, and there was no one right at me," and this occurred after Mintz had identified appellant. Herbst was acting in the capacity of officer for his company, had secured the assistance of two policemen of the City of Houston, had gone to where defendant was with Mintz, and the evidence shows that they had with them the two negroes. The officers were at hand. Appellant testifies that he understood that he was under arrest at the time, and could not go away. Herbst testified that when the defendant asked him "what are you going to do with me," he told him the officers would take him to the station, and they did take him to the station. Under the authorities this testimony is to be regarded as statements of defendant under arrest. See Patrick v. State, 47 S. W. Rep., 550, where the rules in regard to this matter are fairly well discussed. See, also, Jones v. State, 44 Texas Crim. Rep., 408, and Jones v. State, 52 Texas Crim. Rep., 207. In Nolan v. State, 9 Texas Crim. App., 425, a defendant was held to be under arrest where the officers came upon him and would not have permitted him to escape. It was also held in Buckner v. State, 52 Texas Crim. Rep., 271, that where a defendant is arrested the law does not require that an officer must be in bodily presence of the defendant in order to keep him under arrest. It is also a well settled rule that a defendant may be shown to be under arrest by surrounding facts and environments. It is not necessary that the officer should make an arrest in formal words. Nolan v. State, 8 Texas Crim. App., 595; Nolan v. State, 9 Texas Crim. App., 426; Wood v. State, 22 Texas Crim. App., 440; Patrick v. State, 74 S. W. Rep., 550; Zimmer v. State, 64 Texas Crim. Rep., 114. We are of opinion that appellant was under arrest, that the evidence was not reduced to writing, that he was unwarned, and that it was only an oral or verbal conversation occurring between Herbst and defendant with the officers at hand, or as Herbst says, "right near him." They were there for the purpose of arresting appellant, and did arrest him. Appellant denied making the statement imputed to him by Herbst.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*