**Billy Charles WOODS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43479.**

Court of Criminal Appeals of Texas.

April 20, 1971.

Rehearing Denied June 2, 1971.

Allison & Davis, by John H. Davis, R. H. Munsterman, Levelland, for appellant.

E. W. Boedeker, Dist. Atty., Levelland, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This is an appeal from a conviction for the offense of rape. The state did not file

notice that it would seek the death penalty; the punishment was assessed by the court at life.

The evidence reveals that appellant lived with his parents in a rural area of Hockley County. Their house bordered on the north side of a country road adjacent to the Lubbock-Brownfield Highway, approximately ¾ of a mile west of prosecutrix' home which bordered on the south side of the same road.

The offense took place at approximately 1:30 A.M. December 7, 1968, in the bedroom of prosecutrix, who lived alone. She was awakened by a person who threatened her with a knife, raped and then robbed her of approximately $60.00, including "quite a bit of change". Prosecutrix testified that she was raped while lying on her stomach with a pillow over her head, placed there by the assailant.

Prosecutrix also testified that the person was wearing gloves and that "I thought he had on a cap" which covered his face. She was unable to identify him, but did observe that he was wearing leather boots. By virtue of a small "night light," she saw a knife lying on the floor.

After the assault, the prosecutrix was told to "wait one hour before I called the sheriff." Soon after the assailant left she got up, put on a pair of pajamas and coat, and drove to her daughter's home where she reported the incident to the authorities. Later, she was taken to a hospital.

The City Marshal and Sheriff were contacted, and both investigated the incident at approximately 3–3:30 A.M. and found that the screen door was cut, telephone line was cut, and the bed was in disarray. Boot tracks were also found, and the officers decided to return at daylight.

The record further reveals that after the officers' return, the tracks were traced to the vicinity of the house where appellant lived. The officers knocked on the door and entered the house, at which time the Sheriff observed appellant standing there with boots on, questioned him, and told him to "step outside." Appellant asked if he was under arrest and was informed that he was only under investigation. Appellant was then taken outside where he was ordered to place his booted feet into several tracks. Later, the boots were confiscated and he was taken before a magistrate in Levelland; afterwards the Sheriff returned and searched the house, finding the knife identified by prosecutrix. At no time during the aforementioned proceedings was appellant informed of any charge against him or reasons for his being questioned. No arrest or search warrant was ever obtained by the officers. No reason appears from the record why a warrant was not obtained.

The record reflects the following testimony given by Sheriff Weir Clem: "Q. Would it have been inconvenient at the time to get one (warrant)? Would it have delayed you somewhat?

"A. Oh, no. I don't think it would have delayed any at all hardly.

"Q. What was your reason for not getting one?

"A. Because the man and woman, Mr. and Mrs. Woods who lives there gave me permission to come in.

"Q. You didn't know at the time you went out there that they were going to give you permission?

"A. No, I didn't know it.

"Q. You were going to take a chance on it?

"A. Right.

"Q. In this investigation or this search that you conducted out of the house was purely for the reason of trying to discover some evidence that you thought might be there?

"A. Right.

"Q. And you just generally explored the area inside the house?

"A. Yes, sir."

Appellant's mother testified:

"A. Well, I opened the door and he (the sheriff) walked in.

"Q. Did you invite him in or did he just push you aside and walk in?

"A. No, sir, he didn't push me aside. He didn't say anything. When I opened the door he just stepped inside.

"Q. You mean he just walked in without you inviting him in?

"A. Yes, sir."

Appellant attacks the legality of the arrest, contending that all testimony and evidence accruing therefrom is tainted and therefore inadmissible. In view of the fact that appellant's arrest was accomplished without a warrant, we are confronted with the crucial constitutional question of when and under what circumstances an individual suspected of committing a crime must be apprised of the reasons for his detention and interrogation; and when, from the facts in this case, appellant was in fact actually under arrest in view of the applicable provisions of the Texas Code of Criminal Procedure. An arrest without a warrant may be made when the offense is committed in the presence or view of a peace officer, or any other person, when such offense is classified as a felony or as an offense against the public peace. See Art. 14.01 Vernon's Ann.C.C.P.

Art. 14.04 V.A.C.C.P. authorizes an arrest without a warrant:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, *and that the offender is about to escape, so that there is no time to procure a warrant,* such peace officer may, without warrant, pursue and arrest the accused." (Emphasis supplied)

Neither such situation was evident in the case at bar.

The record reflects the following testimony by Sheriff Clem:

"Q. After you tracked him back to this house that is located up there, what did you do?

"A. I went up and knocked on the door and his mother and dad came to the door and asked me to come in and I did, and I talked to Billy and I seen those boots. And I told him, I said, 'You had better come with me.' He says, 'Am I under arrest' and I said, 'No. I want to take you in, for investigation for awhile. You are under investigation.' "

The Sheriff further testified that "I had him go right out there and step in the tracks while he had the boots on."

Art. 15.22 V.A.C.C.P. states:

"A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant."

The record is unclear as to whether the officers actually placed appellant's feet in the tracks or he did so under their command, but the actions of the officers were more than an "investigation." It is evident that at that time appellant's freedom of movement ceased.

Long ago, the Supreme Court of Texas held that actual physical contact with an individual is not necessary for an arrest to be consummated. Shannon v. Jones, 76 Tex. 141, 13 S.W. 477. See also Plazola v. United States, 9 Cir. 1961, 291 F.2d 56. And, formal words of arrest are not a necessity. Gilbreath v. State, Tex.Cr.App., 412 S.W.2d 60; Hurley v. State, 155 Tex. Cr.R. 315, 234 S.W.2d 1006; Clark v. West, Tex.Civ.App., 126 S.W.2d 569. An arrest may be shown by viewing the facts and circumstances in their entirety. Bonatz v. State, 85 Tex.Cr.R. 292, 212 S.W. 494. In Lightfoot v. State, 117 Tex.Cr.R. 515, 35 S. W.2d 163, this court held that two officers who possessed a warrant, but delayed taking the appellant into custody while they

questioned him for 15–20 minutes, accomplished their arrest during the period of questioning.

The Supreme Court of the United States dealt with a similar factual situation as the present case in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. Davis was suspected of rape, and detained for the purpose of fingerprinting. The detention was based on neither a warrant nor probable cause. In reversing, the Court stated:

"Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.' We made this explicit only last Term in Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, when we rejected 'the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a "technical arrest" or a "full-blown search".' "

The Court went on to acknowledge that fingerprints are distinguishable from statements, but they are " * * * something of evidentiary value which the public authorities have caused an arrested person to yield to them during illegal detention. If one such product of illegal detention is proscribed, by the same token all should be proscribed.

The Supreme Court of the United States, in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, stated:

" * * * if an arrest without a warrant is to support an incidental search, it must be made with probable cause. * * * *When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete.* * * * " (Emphasis supplied)

Viewing the record in its entirety, it is evident that the present case does not fit any of the so called "exceptions" to the overriding constitutional requirement that an arrest must be accomplished with or without a warrant solidly based on probable cause and exceeding a mere suspicion or "hunch". The appellant was not searched for weapons, and it is obvious from the record that the officers felt no threat to their personal safety. There is no indication whatsoever from the testimony presented that the officers feared appellant would try to escape. Furthermore, the conditions involving "exigent circumstances," "hot pursuit," and permissible search to seize fruits and instrumentalities of the crime in such situations are totally lacking. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1647, 18 L.Ed.2d 782.

For the reasons herein set out, we hold that reversible error was committed when the fruit of the search from the arrest was admitted into evidence.

The judgment is reversed and the cause remanded.