In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00041-CR


______________________________




CHARLES DAVID WASHBURN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Gregg County, Texas


Trial Court No. 2006-0839




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Charles David Washburn appeals from his conviction for driving while intoxicated (DWI). 
When dispatched to the scene of a single vehicle accident, Trooper Jonathon Anderson found
Washburn sitting on the tailgate of a truck. Washburn was injured, and his face was covered in
blood. Washburn admitted drinking, and Anderson could detect the odor of alcohol on or about
Washburn's person. At the hospital, Anderson requested a specimen of blood, provided the warnings
required by statute to be given to an arrested person, and apprised Washburn of the consequences
for refusing to provide a requested specimen of blood. The warning, form DIC-24, read by 
Anderson, begins: "You are under arrest for an offense . . . ." Washburn consented to providing a
specimen of blood. After the trial court denied Washburn's motion to suppress the blood specimen,
Washburn pled nolo contendere and the trial court found Washburn guilty. The trial court assessed
punishment at 180 days in the county jail, probated for fifteen months. Washburn appeals, claiming
the trial court erred in denying the motion to suppress. We affirm.

 In his sole point of error, Washburn argues the trial court erred in denying the motion to
suppress because the blood specimen was obtained illegally as a result of unlawful coercion and
duress. According to Washburn, Anderson incorrectly informed Washburn his driver's license would
be suspended if he refused to provide a blood specimen. Washburn contends that, because he was
not under arrest, his driver's license could not be suspended. At the hearing, Washburn testified he
would have refused the request if he had not been incorrectly informed by the police officer.

 We review the trial court's decision on a motion to suppress evidence by applying a
bifurcated standard of review deferring to the trial court's determination of historical facts that
depend on credibility, but reviewing de novo the trial court's application of the law. Wiede v. State,
214 S.W.3d 17, 25 (Tex. Crim. App. 2007); see Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any
theory of law that finds support in the record." Gonzalez v. State, 195 S.W.3d 114, 126 (Tex. Crim.
App. 2006); see Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we
review de novo determinations of reasonable suspicion and probable cause after granting deference
to the trial court's determination of historical facts. Guzman, 955 S.W.2d at 87.

 The Fourth Amendment to the United States Constitution and Article I, Section 9 of the
Texas Constitution guarantee the right to be secure against unreasonable searches. U.S. Const.
amend. IV; Tex. Const. art. I, § 9. The taking of a blood specimen is considered a search and
seizure within the meaning of the Fourth Amendment. Knisley v. State, 81 S.W.3d 478, 483 (Tex.
App.--Dallas 2002, pet. ref'd); see Schmerber v. California, 384 U.S. 757, 770 (1966) (search
reasonable due to exigent circumstances). The defendant alleging a Fourth Amendment violation
bears the burden of producing some evidence that rebuts the presumption of proper police conduct. 
Amador v. State, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial
burden of proof by establishing that a search or seizure occurred without a warrant." Id. The burden
then shifts to the State to prove that the search or seizure was nonetheless reasonable under the
totality of the circumstances. Id. at 672-73. Under Article 38.23, evidence must be excluded once
a causal connection between the illegality and the evidence is established. Roquemore v. State, 60
S.W.3d 862, 870 (Tex. Crim. App. 2001); State v. Daugherty, 931 S.W.2d 268, 270 (Tex. Crim.
App. 1996); see Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).

 The Texas Transportation Code provides that a person who has been arrested for an offense
arising out of acts committed while the person was operating a motor vehicle in a public place while
intoxicated is deemed to have consented to the taking of one or more specimens of breath or blood
for analysis to determine the alcohol concentration or the presence of a controlled substance. Tex.
Transp. Code Ann. § 724.011 (Vernon 1999); Coggins v. State, 160 S.W.3d 177, 179 (Tex.
App.--Texarkana 2005, no pet.). However, the person retains an absolute right to refuse a test. (1) 
Tex. Transp. Code Ann. § 724.013 (Vernon 1999); Coggins, 160 S.W.3d at 179. Consent may be
involuntary if induced by an officer's misstatement of the consequences of refusal. (2) 

 The Texas Transportation Code only requires an officer to give the statutory warnings when
the  person  has  been  arrested.  See,  e.g.,  Tex.  Transp.  Code  Ann.  §  724.011  ("If  a  person
is arrested . . . ."); and Tex. Transp. Code Ann. § 724.012 ("One or more specimens . . . may be
taken if the person is arrested . . . ."). Because the warnings are only required when a suspect is
under arrest, Washburn claims Trooper Anderson incorrectly informed him that his driver's license
would be suspended if he refused to provide the specimen. (3) Washburn's argument requires us to first
determine whether Washburn was under arrest at the time the specimen was requested and then
whether Washburn's consent was voluntary.

Washburn Was Under Arrest at the Time of the Request

 An individual is arrested when he or she has been actually placed under restraint or taken into
custody. Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 2005). "A person is in 'custody' only if,
under the circumstances, a reasonable person would believe that his freedom of movement was
restrained to the degree associated with a formal arrest." Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318 (1994)). At least four general
situations may constitute custody: (1) the suspect is physically deprived of his or her freedom of
action in any significant way, (2) a law enforcement officer tells the suspect that he or she cannot
leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe
that his or her freedom of movement has been significantly restricted, and (4) there is probable cause
to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. Dowthitt,
931 S.W.2d at 255. The Texas Court of Criminal Appeals has explained the fourth situation as
follows:

 the officers' knowledge of probable cause be manifested to the suspect. Such
manifestation could occur if information substantiating probable cause is related by
the officers to the suspect or by the suspect to the officers. Moreover, given our
emphasis on probable cause as a "factor" in other cases, situation four does not
automatically establish custody; rather, custody is established if the manifestation of
probable cause, combined with other circumstances, would lead a reasonable person
to believe that he is under restraint to the degree associated with an arrest. 


Id. 

 Trooper Anderson had probable cause to arrest Washburn and did not inform Washburn that
he was free to leave. Washburn's car collided with a tree in a suspicious manner. Anderson testified
there were no passengers involved in the accident. The wrecked vehicle Washburn was sitting on
when Anderson arrived was, according to information obtained after checking the license plate
number, held in Washburn's name. At the time of the accident, the road was dry and Washburn's car
began to skid while in the lane designated for oncoming traffic. Washburn exhibited numerous signs
of intoxication. He admitted drinking, had slurred speech, and Anderson could detect the odor of
alcohol on or about Washburn's person. We conclude Anderson had probable cause to arrest
Washburn for DWI. See Knisley, 81 S.W.3d 478 (officer had probable cause to arrest operator of
motorcycle based on 1) gouges in the pavement which appeared to have been caused by a motorcycle
sliding across the pavement, and 2) the operator of the motorcycle smelled of alcohol and was unable
to answer some questions); see also Reynolds v. State, 902 S.W.2d 558, 560 (Tex. App.--Houston
[1st Dist.] 1995, pet. ref'd) (probable cause to arrest when officer testified defendant had slurred
speech, bloodshot eyes, breath that smelled of alcohol, and posed a danger to himself and others).

 Further, Washburn was under the age of twenty-one at the time of the accident. It is beyond
dispute that Trooper Anderson had probable cause to arrest Washburn for driving under the influence
by a minor. A person under the age of twenty-one "commits an offense if the minor operates a motor
vehicle in a public place while having any detectable amount of alcohol in the minor's system." Tex.
Alco. Bev. Code Ann. § 106.041 (Vernon 2007). Reviewing de novo the finding of probable
cause, we conclude Anderson had probable cause to arrest Washburn for driving under the influence
by a minor or for DWI.

 The next issue is whether Washburn was under arrest at the time of the offense. The State
cites Bell v. State, 881 S.W.2d 794 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd), which
contains almost identical facts to the case at issue. In Bell, the defendant was transported to a
hospital following an automobile accident where he ran his car into a ditch. Id. at 796. The officer
detected the odor of alcohol on the defendant's breath but did not conduct any sobriety tests. Id. At
the hospital, the officer read the DIC-24 form to the defendant and requested a blood sample. Id. 
Even though the arresting officer testified Bell was not under arrest, the Fourteenth District Court
of Appeals concluded there was evidence to support a conclusion the defendant was under arrest
when he consented to the taking of a blood specimen. Id. at 800.

 Other cases with similar facts to this case have likewise concluded the defendant was under
arrest. See, e.g., Nottingham v. State, 908 S.W.2d 585, 587 (Tex. App.--Austin 1995, no pet.)
(defendant under arrest at hospital when she had sustained injuries in an automobile accident, she
had failed horizontal gaze nystagmus (HGN) test, officer detected odor of alcohol, and she was read
DIC-24 warnings); State v. Williams, 814 S.W.2d 256, 259 (Tex. App.--Austin 1991), aff'd, 832
S.W.2d 52 (Tex. Crim. App. 1992) (defendant under arrest at hospital when he had sustained injuries
in one-car accident, his eyes were red and bloodshot, his speech was slurred, he failed HGN test, and
he was read DIC-24 warnings).

 Trooper Anderson testified that, while he believed he had probable cause to arrest Washburn
at the time he requested a specimen, he never arrested Washburn. (4) Washburn argues that it "is
apparent that the trooper used the DIC-24 out of cautiousness, not because he intended to place
Appellant under arrest." However, the subjective intent of law enforcement officials is irrelevant
unless that intent is somehow communicated or otherwise manifested to the suspect. Dowthitt, 931
S.W.2d at 254. The test is whether a reasonable person would believe his or her freedom of
movement was restrained to the degree associated with a formal arrest. 

 Under the circumstances of this case, the manifestation of probable cause by the defendant,
combined with other circumstances, would lead a reasonable person to believe that he or she is under
restraint to the degree associated with an arrest. When asked what had happened, Washburn
responded, "I'm not going to lie to you. I have been drinking," and was obviously aware of the facts
giving rise to probable cause, such as the fact that he was the driver of a vehicle which struck a tree. 
Further, there were other circumstances which would lead a reasonable person to conclude that an
arrest had occurred. At the time of the request, Washburn was receiving medical care at the hospital
and was informed he was being investigated for a crime. Further, Washburn testified he remembered
being read the warnings contained in form DIC-24 and admitted that the first sentence of the
warnings states, "You are under arrest for an offense . . . ." 

 The mere fact that Trooper Anderson read Washburn form DIC-24 is some evidence
Washburn was under arrest. In Bell, the Fourteenth District Court of Appeals held "the very fact that
the form was read to Bell was some evidence that Bell was under arrest." Bell, 881 S.W.2d at 799. 
But see Combest v. State, 981 S.W.2d 958, 960 (Tex. App.--Austin 1998, pet. ref'd) (holding that
no arrest occurred despite DIC-24 warnings because "[a]ppellant and the State both agree[d] and the
record affirm[ed]" that appellant was not under arrest). The Fourteenth District also noted "the mere
fact that an officer makes the statement to an accused that he is under arrest is not enough to
complete the arrest." Bell, 881 S.W.2d at 799 (quoting Burkhalter v. State, 642 S.W.2d 231, 233
(Tex. App.--Houston [14th Dist.] 1982, no pet.)). Although the reading of form DIC-24 may not
be sufficient by itself to constitute an arrest, it is a significant factor in determining whether a
reasonable person would believe he or she was free to leave. We agree with the Austin Court of
Appeals that, "[w]hile the officer might have considered the language of the DIC-24 form to be
merely a formality, a reasonable person in appellant's position would believe that [he or she] was not
free to leave after being told by a police officer that [he or she] was under arrest." See Nottingham,
908 S.W.2d at 588. There is no evidence that Anderson informed Washburn he was not under arrest
or was free to leave. (5) Under the facts of this case, a reasonable person would believe his or her
freedom of movement was restrained to the degree associated with a formal arrest. See Tex. Dep't
of Pub. Safety v. Latimer, 939 S.W.2d 240, 244 (Tex. App.--Austin 1997, no pet.) (defendant in
hospital after being read a form containing the words "[y]ou are under arrest"--a reasonable person
would not believe he was free to leave). The manifestation of probable cause by the defendant,
combined with the other circumstances at the time of the request, would lead a reasonable person
to believe that he or she is under restraint to the degree associated with an arrest. We conclude
Washburn was in fact under arrest at the time of the request.

Washburn's Consent Was Voluntary

 Washburn's only argument that his consent was involuntary is that the warnings were
incorrect and rendered his otherwise voluntary confession involuntary. Washburn testified he did
not freely consent to the specimen because he "was afraid [he] was going to lose [his] license." If
he had not been told his driver's license would be suspended, Washburn testified he would have
refused to provide a specimen. As discussed above, Washburn was under arrest at the time the
request was made. As such, the warnings given by Trooper Anderson were appropriate. Because
Washburn was under arrest at the time Anderson requested the specimen, Washburn was not
misinformed concerning the consequences of refusal. 

 Consent to search is one of the well-established exceptions to the constitutional requirements
of both a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973);
Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). "Although the federal constitution
only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the
Texas Constitution requires the State to show by clear and convincing evidence that the consent was
freely given." Carmouche, 10 S.W.3d at 331; see Montanez v. State, 195 S.W.3d 101, 105 (Tex.
Crim. App. 2006). To be valid, a consent to search must be positive and unequivocal and must "not
be coerced, by explicit or implicit means, by implied threat or covert force." Id. Consent is "not
established by 'showing no more than acquiescence to a claim of lawful authority.'" Id.

 The record contains sufficient evidence that Washburn's consent was voluntary. Anderson
testified it was clear Washburn had consented to the blood specimen. Washburn testified he was
read the DIC-24 form and admitted giving consent to the taking of a blood specimen. We grant
almost total deference to trial courts' determinations when they are based on an evaluation of
credibility and are supported by the record. No error has been shown in the trial court's
determination that Washburn's consent was freely and voluntarily given. See Masterson v. State, 155
S.W.3d 167, 170 (Tex. Crim. App. 2005). 

 For the reasons stated, we overrule Washburn's sole point of error and affirm the trial court's
judgment.

 


 Jack Carter

 Justice


Date Submitted: August 7, 2007 

Date Decided: September 5, 2007


Publish 
1. An exception to the right to withdraw the implied consent exists if the requirements of
Section 724.012(b) are satisfied. See Tex. Transp. Code Ann. § 724.012 (Vernon Supp. 2006);
Badgett v. State, 42 S.W.3d 136, 138-39 (Tex. Crim. App. 2001); Broadnax v. State, 995 S.W.2d
900, 904 (Tex. App.--Austin 1999, no pet.). The predicates for taking an involuntary blood
specimen were not established in this case.
2. See Erdman v. State, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993); State v. Woehst, 175
S.W.3d 329, 333 (Tex. App.--Houston [1st Dist.] 2004, no pet.) (defendant established a causal
connection between the officer's misinformation and her consent); State v. Sells, 798 S.W.2d 865,
867 (Tex. App.--Austin 1990, no pet.).
3. We note the Dallas Court of Appeals has held consent under the implied consent statute is
"not implied absent an arrest" and the withdrawal of consent statutes are not applicable when the
suspect has yet to be arrested. Knisley, 81 S.W.3d at 482; see Tex. Transp. Code Ann.
§§ 724.001-.014 (Vernon 1999 & Supp. 2006). Because, as discussed below, Washburn was under
arrest at the time Trooper Anderson requested the specimen, it is not necessary for us to determine
whether a suspect's driver's license can be revoked if the request is made when the suspect is not
under arrest. 
4. The context of Anderson's testimony indicates he believed that a suspect was under arrest
only when the suspect was physically restrained in some manner. Anderson denied ever restraining
Washburn with handcuffs. A person can be under arrest even when he or she is not physically
restrained. See Woods v. State, 466 S.W.2d 741, 743 (Tex. Crim. App. 1971).
5. We note Trooper Anderson testified Washburn was "free to leave if he wanted to . . . against
medical advice." However, there is no evidence Washburn was informed he was free to leave. 
When asked whether he had "restrained [Washburn's] movement in any way," Anderson responded,
"The hospital did that." 



terminated," but allowing an elected district
attorney to prosecute a former client ultimately "undermine[s] our legal system." Id. (referencing
Comment 1 and 8, Rule 1.05). The only way the elected prosecutor could avoid an ethical conflict
would be if he or she proceeded cautiously, "ignoring any fact known by the new prosecutor about
the former client as a result of the former representation." Id. But, continued the ethics committee,
this is not an adequate solution: 

 Although a prosecutor has the responsibility to see that justice is done and not simply
be an advocate, Comment 1, Rule 3.09, the prosecutor is still obligated to act with
competence, commitment and dedication on the State's behalf. Comment 6, Rule
1.01. Adherence to the Rules places an impossible burden on an effective prosecutor
and creates an almost certain probability that in the adversarial trial setting,
confidentiality will be compromised. Similarly, to obtain and ensure protection, the
objecting former client is forced to divulge the very same confidential information
he seeks to prevent from disadvantageous use, thus defeating the purpose of the rules. 
These conflicting obligations impose conflicting duties on both the prosecutor and
the former client and thus requires [sic] prohibition of this practice, absent the former
client's consent. See Comment 7 to Rule 1.06.


Id. 

 The opinion also goes one step further--opining that an elected district attorney would be
prohibited from participating in a trial in which the elected district attorney used a prior conviction
as enhancement or punishment evidence, regardless of whether the prior conviction is for a matter
that is "substantially related" to the current proceeding. Id. As this latter situation requires no proof
of a "substantial relationship" between the prior representation and the current proceedings, yet
would nonetheless be prohibited, the opinion's ultimate resolution of this corollary issue only
undergirds our conclusion that the present case likewise cannot be permitted to go forward with
Young representing the State as an adversary to his former client.

 E. The Record Below Mandates But One Result: Young May Not Prosecute
Goodman


 Young, by virtue of his previous representation of Goodman, possesses confidential
information about Goodman regarding "the alcohol issue," specifically, how much alcohol Goodman
consumes on an average basis. Goodman has not waived Young's duty not to disclose the
confidences revealed during that prior presentation. 

 There is a real, genuine, and inherent danger that the State, with Young serving as its
representative, would use this confidential information in its prosecution of Goodman, especially
when the prior offense is being used as a felony jurisdictional enhancement and when the underlying
criminal offense is the same type of crime for which Young previously represented Goodman. If
Goodman chooses to testify during guilt/innocence, Young will be free to cross-examine the accused
about his pattern of alcohol use and abuse. See Tex. R. Evid. 611(b) (witness may be cross-examined about any matter relevant to any issue in the case). While this is true in all DWI
prosecutions, what is unique in this case is that Young already knows the proper and truthful
answers to such questions solely because he learned those answers during the scope of his prior
representation. See Tex. Comm. on Prof'l Ethics, Op. 538. The typical district attorney prosecuting
the average DWI case would not have such an advantage. Further, the fear of being cross-examined
by Young during guilt/innocence about these confidential disclosures may dissuade Goodman from
otherwise testifying in his own defense during guilt/innocence. And because the majority of DWI
prosecutions involve only two potential fact witnesses--the arresting police officer and the
accused--Goodman might well be foreclosed (as a practical matter) from offering any evidence in
his defense because the fear of being cross-examined potentially prohibits the testimony of the only
other witness capable of controverting the State's testimonial evidence.

 Additionally, the gravity of Goodman's pattern of alcohol use, misuse, and/or abuse will
undoubtedly become an issue before the jury if the case reaches the punishment phase. Young, by
virtue of having previously represented Goodman on an alcohol-related charge, and having discussed
with him his daily alcohol consumption, will have greater insight into Goodman's habits and
character flaws than would someone who had not been a part of that necessarily intimate attorney-client relationship. Since this information may be highly probative and relevant at the instant trial,
there exists a genuine threat that Young, to properly fulfill his responsibility as a zealous prosecutor,
would use the confidential information to make the best case that Goodman is deserving of the
strongest punishment from the judge or jury. See id. This creates an undeniable advantage for the
State--an advantage that is both violative of the right of due process and avoidable. See id. 

 We conclude the evidence before the trial court leads to but one, inescapable conclusion: 
these confidences (learned by Young during his prior service as Goodman's attorney in the most
recent DWI prior) are so "substantially related" to the issues that will arise in the current prosecution
that we have before us "the existence of a genuine threat of disclosure," which necessitates Young's
disqualification. Because the trial court did not reach this determination, the trial court erred, and
we must direct the lower court to render the judgment that is required by the evidence.

 F. Why This Rises to a Due-Process Violation

 Remembering the United States Supreme Court's guidance from Mathews, 424 U.S. at 335,
regarding how to identify due-process violations, we are led to the conclusion that this case achieves
such a classification. First, Goodman's interest in keeping confidential his attorney-client
communications will be protected by prohibiting Young from prosecuting this case. Second, there
is a real risk that these communications will be used to Goodman's detriment if Young is not
disqualified. There are no adequate safeguards short of Young's disqualification that will protect this
interest. And finally, the Government (as represented by the Lamar County district attorney's office)
will, at best, suffer a minimal fiscal or administrative burden due to Young's disqualification because
all that is required is the substitution of another attorney to handle Goodman's prosecution. See Tex.
Comm. on Prof'l Ethics, Op. 538 (discussing solutions of appointing special prosecutor under Tex.
Code Crim. Proc. Ann. art. 2.07 (Vernon 2005), or screening the elected from other lawyers in
prosecutor's office). Thus, on balance, the factors enunciated by the Supreme Court tip the scales
of justice in Goodman's favor on the issue of whether the trial court's failure to disqualify Young
rises to the level of a due-process violation.

 G. Appeal Is Neither an "Efficient" Nor Adequate Remedy

 The State has argued that Goodman has two available remedies in this case: If he is
convicted, and if the fact-finder makes affirmative findings regarding the jurisdictional priors, then
Goodman could appeal the conviction and seek reversal based on the erroneous denial of his motion
to disqualify the prosecutor. See Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon 1979). Goodman
may also file an application for writ of habeas corpus following the disposition of any appeal. See
generally Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon 2005). However, appeal and habeas
corpus are both inadequate and inefficient remedies in this case for several reasons.

 First, requiring the parties to proceed through a lengthy litigation process, just so Goodman
could later obtain reversal on appeal, would be a tremendous waste of the parties' (and the judicial
system's) financial and temporal resources. Second, if Young is convicted and sentenced for the
enhanced first-degree felony, or if he receives any sentence greater than nine years' imprisonment,
he will be ineligible for release on bond pending appeal. See Tex. Code Crim. Proc. Ann. art.
44.04(b) (Vernon Supp. 2006). The threat of incarceration pending an appeal on the denial of the
motion to quash might further impact Goodman's trial strategy. Cf. Kniatt v. State, 157 S.W.3d 83,
85-87 (Tex. App.--Waco 2005, no pet.) (discussion that pretrial incarceration resulting from
improper revocation of bond may cause involuntary guilty plea), rev'd, PD-0323-05, 2006 Tex. Crim.
App. LEXIS 1128 (Tex. Crim. App. June 20, 2006) (finding revocation of bond improper, but guilty
plea freely given). Third, Goodman is not entitled to bond pending the determination of a post-conviction application for writ of habeas corpus. See generally Tex. Code Crim. Proc. Ann. art.
11.07, § 5 (applicant entitled to release only if Texas Court of Criminal Appeals grants such relief
in its disposition on application's merits). Fourth, Goodman has no right to counsel during a habeas
corpus proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Individually and collectively,
these reasons dissuade us from concluding the State's proposed alternative remedies are adequate.

IV. State ex rel. Eidson v. Edwards

 Finally, the State contends a trial court is without authority to disqualify a prosecutor due to
his or her status as an independent member of the judicial branch. In support of this contention, the
State cites State ex rel. Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990). In Eidson, a
member of the Taylor County criminal district attorney's staff had previously represented James
Edward Clayton in three felony cases. Id. at 3. The court then reasoned that (1) because the offices
of county and district attorneys are constitutionally protected under Tex. Const. art. V, § 21;
(2) because the effect of the trial court's disqualification order was to remove the entire prosecutor's
office without conducting a removal trial, see Tex. Local Gov't Code Ann. § 87.013 (Vernon
1999); and (3) because there was no difference between removing a prosecutor from a case and
removing a prosecutor from office, then the trial court erred in ordering the disqualification of the
Taylor County criminal district attorney's office in its prosecution of Clayton. Eidson, 793 S.W.2d
at 4-6.

 We believe the applicability of Eidson has since been undermined. In Pirtle, 887 S.W.2d at
926, this State's highest criminal court enunciated a standard that mandamus relief is available when
the relator can establish that he or she has no other adequate legal remedy and that the facts of the
case show he or she has a clear legal right to the remedy sought. A trial court may disqualify a
State's attorney on the basis of a conflict of interest that rises to a due-process violation. Id. at 927. 
In Hill, the court ultimately concluded that the relator had failed to make such a showing. However,
the concurring and dissenting opinions further clarify that the court was debating the proper
standards for the availability of mandamus relief, under the assumption that ultimately (on a proper
showing) relief could be granted. See, e.g., id. at 933 (Meyers, J., concurring) ("But it is clear from
the text of this opinion that the plurality judges do not mean Respondent would really have been
without lawful authority to bar the AGs from serving as prosecutors had the evidence shown a
conflict of interest rising to the level of a due process violation . . . ."). Accordingly, we believe the
sweeping language employed in Eidson is no longer binding precedent in light of the court's more
recent decisions.

V. A Final Note

 Our decision today should not be read as an endorsement of the idea that a district or county
attorney is forever barred from prosecuting his or her former clients. That is not the law, nor should
it be. Instead, a disqualification should occur only when (1) the underlying proceeding is so
substantially related to real and actual disclosures (as opposed to theoretical discussions) that
occurred during the previous attorney-client relationship, and (2) there exists a genuine threat that
disclosure of these confidential communications will either materially advance the State's case or
drastically undermine the accused's ability to mount a defense--such that this advancement or
undermining rises to the level of a due-process violation. We believe such is the case here, but only
because of the discrete facts in the record before us.

 There may be other times, even cases involving subsequent DWI charges, where there is no
undisputed evidence of actual confidential communications that would materially impact either the
State's case or the accused's ability to mount a defense. In those situations, disqualifications should
neither be sought nor granted. Similarly, merely because a prosecutor once served as an accused's
attorney for a traffic ticket does not now automatically prohibit that attorney from prosecuting the
accused for murder; much more evidence must be apparent in the record that somehow demonstrates
that the denial of a disqualification motion will result in a due-process violation.

VI. Conclusion

 For the reasons given above, we cannot say either appeal or habeas provides Goodman with
an adequate or efficient remedy. Goodman has shown Young possesses confidential information as
a result of the latter's prior representation of Goodman for a DWI case now being used by the State
to jurisdictionally enhance Goodman's current charge. The former and the current charges are
substantially related, and there is a genuine threat that the confidential information may be used
against Goodman. To permit Young to continue to represent the State would violate Goodman's
due-process rights. Because the law and facts available in this case lead to that inescapable
conclusion, and because the trial court did not so hold, we find the trial court erred in denying
Goodman's petition for writ of mandamus. We, therefore, conditionally grant Goodman's petition. 
The writ will issue only if the trial court does not withdraw its previous order of denial and enter an
order disqualifying Young in accordance with the opinion of this Court within ten days of the
issuance of our opinion.



 Jack Carter

 Justice


Date Submitted: December 20, 2006

Date Decided: December 21, 2006
1. We take judicial notice of the fact that Young was elected Lamar County's county attorney,
also performing the duties of a district attorney, in 2004. See Tex. R. Evid. 201(b), (f).
2. The charge in cause number 18802 was originally categorized as a third-degree felony. 
Goodman ultimately pled guilty pursuant to a negotiated plea agreement and received punishment
at the misdemeanor level.